**LAKE OZARK CONSTRUCTION INDUSTRIES, INC., et al.,
Appellants,**

v.

**OSAGE LAND COMPANY, L.L.C.,
et al., Defendants,**

**Golf Trust of America,
L.P., Respondent.**

**No. WD 63528.**

Missouri Court of Appeals,
Western District.

April 5, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 2005.

As Modified May 31, 2005.

Application for Transfer Denied
Aug. 30, 2005.

Reid F. Holbrook, Overland Park, KS, for appellants.

David James Kornelis, Kansas City, MO, for respondents.

Before EDWIN H. SMITH, C.J., and ELLIS and HOWARD, JJ.

EDWIN H. SMITH, Chief Judge.

Lake Ozark Construction Industries, Inc. (LOCI), and its parent company, Everett Holding Company, appeal from the judgment of the Circuit Court of Miller County granting the respondent, Golf Trust of America, L.P. (Golf Trust), summary judgment on Counts IV and V of the appellants' six-count, second amended petition and the dismissal of those counts with respect to the remaining named defendants. The lawsuit arose out of several contracts entered into between LOCI and M & M Contractors, Inc., (M & M), pursuant to which, LOCI, as a subcontractor, agreed with M & M, the general contractor, to perform and supply the necessary labor and materials for work on the Osage National Golf Club project (the Project), located in Miller County, Missouri. The Project consisted of developing land into a golf course and club (club property), and the surrounding property into private residences (residential property). In Count IV, the appellants sought to enforce a mechanic's lien, in accordance with Chapter 429,[1] on both club and residential property, for work it alleged was performed, but for

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

which it was not paid, in the total amount of $1,427,302.47. In Count V, the appellants sought a declaration of the court that their mechanic's lien was superior to the interests of other creditors named as defendants.

The appellants raise two points on appeal. In both points, they claim that the trial court erred in granting summary judgment to Golf Trust on Counts IV and V of the appellants' second amended petition and dismissing those counts as to the remaining named defendants. Because the summary judgment for Golf Trust on Count V was based on the summary judgment for Golf Trust on Count IV and the dismissal of Counts IV and V as to the remaining defendants was also based thereon, the appeal of the summary judgment for Golf Trust on both counts and the appeal of the dismissals of both counts as to the remaining defendants effectively turn on the same issue. In that regard, the appellants claim, *inter alia,* in Point I, that the trial court erred in granting summary judgment to Golf Trust on Count IV, in which the appellants sought to enforce their mechanic's lien as to the subject club and residential Project lots, because, in granting summary judgment on the basis that the property description of the required lien statement was deficient, the court misapplied §§ 429.040 and 429.080, in that the inclusion of *non-contiguous* lots in the description did not invalidate the lien as to the contiguous lots described in the notice. In Point II, they essentially make the same claim they make in Point I, except they claim that should we find against them in Point I, the release of their lien as to the non-contiguous lots cured any deficiency found in the statement for including therein a description of the non-contiguous lots.

We reverse and remand.

## Facts

On May 16, 1996, and June 1, 1997, LOCI entered into several contracts with M & M, in which LOCI agreed to provide the necessary labor and materials for work for infrastructure, grading, excavation, and improvements to the Project, including work on both club and residential properties. LOCI finished the agreed-upon work on the Project on November 30, 1998, but was not paid. On May 27, 1999, the appellants filed, in the Circuit Court of Miller County, a mechanic's lien statement seeking to impose a lien on various club and residential Project lots for their work. The statement was filed pursuant to § 429.040, which allows for a single lien to be imposed on multiple lots, provided they are contiguous.

On September 27, 1999, the appellants filed a six-count petition in the Circuit Court of Miller County. In Count I, they sought damages against M & M for breach of contract; in Count II, they sought payment on account from M & M; in Count III, they sought damages from M & M on a theory of quantum meruit; in Count IV, they sought to enforce their blanket mechanic's lien against the owners of the subject Project club and residential lots; in Count V, they sought a declaration of the trial court that their mechanic's lien was superior to the interests of other creditors named as defendants; and in Count VI, they sought payment under a promissory note, secured by a deed of trust, executed by Osage Land Company, L.L.C.

On December 30, 1999, the appellants filed a first amended petition, adding several named defendants. On March 27, 2000, they filed a motion for partial summary judgment on Counts I–VI as to certain of the named defendants. On June 25, 2001, the trial court sustained their motion as to Count VI against Osage Land, ordering it to pay the balance due

under the note, $1,304,422.52, but overruled the motion in all other respects. On July 18, 2001, the appellants filed a second amended petition, which added more named defendants. The record on appeal reflects that M & M never filed an answer to the appellants' second amended petition. On September 27, 2001, counsel for M & M filed a motion to withdraw, which was granted by the trial court on December 4, 2001.

On February 20, 2002, Golf Trust filed a motion for partial summary judgment on Counts IV and Count V of the appellants' second amended petition, alleging that the lien filed by the appellants was invalid because it sought to impose a blanket lien on lots which were not contiguous, in violation of § 429.040.[2] On March 20, 2002, the appellants filed a partial release, releasing any lien claim as to the non-contiguous lots described in the appellants' lien statement and reducing their lien demand, accordingly, by $19,577 for the work done on the non-contiguous lots that were released.

Golf Trust's motion for partial summary judgment was heard and sustained by the trial court on March 25, 2002. This ruling was memorialized in an order, dated April 20, 2002, which stated, *inter alia:* "IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Defendant Golf Trust of America, L.P.'s Motion for Summary Judgment on Counts IV and V of Second Amended Petition (Single Lien Claimed On Multiple Tracts That Are Not Contiguous) is granted." The court's order was not designated, under Rule 74.01(b),[3] for early appeal, and therefore, was not a final judgment subject to appeal.

On March 29, 2002, the appellants filed a motion for default judgment against M & M, which, as noted *supra,* had not filed a response to the appellants' second amended petition. A default judgment was granted against M & M on April 1, 2002. As to Count I, the trial court awarded the appellants $1,780,218.83, plus attorney's fees of $285,686.38, travel and mileage expenses of $45,220, and court costs. In addition, the trial court dismissed Counts II and III, without prejudice, at the request of the appellants.

On November 19, 2003, the trial court issued what it denominated a "Final Judgment," entering summary judgment in favor of Golf Trust on Counts IV and V of the second amended petition and dismissing those same counts as to the remaining defendants. It is this judgment from which the appellants appeal.

This appeal followed.

### Standard of Review

In reviewing the grant of summary judgment:

> [o]ur review is essentially de novo. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the

---

2. On the same date, Golf Trust filed a second motion for partial summary judgment on the ground that there was no evidence that the various owners of the multiple lots covered by the lien contracted with M & M for the work performed by the appellants. The trial court did not rule on this second motion.

3. All rule references are to Missouri Rules of Civil Procedure, 2005, unless otherwise indicated.

trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 380. Furthermore, when considering appeals from summary judgments, we will:

> review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376.

## I.

■ In Point I, the appellants claim, as to the dispositive issue presented, that the trial court erred in granting summary judgment to Golf Trust on Count IV, which sought enforcement of the appellants' mechanic's lien, because, in granting summary judgment on the basis that the property description of the required lien statement was deficient, the court misapplied §§ 429.040 and 429.080, in that the inclusion of *non-contiguous* lots in the description did not invalidate the lien as to the contiguous lots described in the notice. We agree.

■ To make a *prima facie* case for summary judgment, under Rule 74.04, the movant must allege facts, which are supported by specific references to the pleadings, discovery, exhibits or affidavits, demonstrating the lack of a genuine issue as to such facts and which establish a right to judgment as a matter of law. Rule 74.04(c); *Bost v. Clark*, 116 S.W.3d 667, 674 (Mo.App.2003). If the movant is a defending party, as is the case here, the movant can make a *prima facie* case for summary judgment by showing either: (1) facts that negate any one of the claimant's required proof elements; (2) that the nonmovant, after an adequate period of discovery, has not been able to produce and will not be able to produce evidence sufficient to allow the trier-of-fact to find the existence of any one of the claimant's required proof elements; or, (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly pleaded affirmative defense. *Williams v. Mo. Highway & Transp. Comm'n*, 16 S.W.3d 605, 610 (Mo. App.2000). Regardless of which of these three means is employed by the defending party, each establishes a right to judgment as a matter of law. *Id.* As we discuss, *infra*, Golf Trust employed the first means.

■ Chapter 429 governs mechanic's liens. Section 429.010, the statute that authorizes mechanic's liens, provides, in pertinent part:

> Any person who shall do or perform any work or labor upon, or furnish any material ... for any building, erection or improvements upon land ... under or by virtue of any contract with the owner or proprietor thereof ..., upon complying with the provisions of sections 429.010 to 429.340, shall have for his work or labor done, or materials ... a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated.

A mechanic's lien is "a remedy in the nature of a charge on the land given by statute to secure a priority of payment for the performance of labor or the supply of

material to buildings or other improvements to be enforced against the particular property in which they have become incorporated." *Herbert & Brooner Constr. Co. v. Golden,* 499 S.W.2d 541, 545 (Mo.App. 1973). "Our lien statutes are based on and justified by the principle that those who have contributed labor or material to the improvement of property are entitled to look to the property for compensation." *Id.*

 Because "[m]echanic's liens exist solely by virtue of legislative enactment; ... compliance with the legislative enactment is essential to securing the lien." *Springfield Underground, Inc. v. Sweeney,* 102 S.W.3d 7, 9 (Mo. *banc* 2003). In that regard, reasonable and substantial compliance is sufficient. *Breckenridge Material Co. v. Byrnesville Const. Co.,* 842 S.W.2d 551, 552 (Mo.App.1992); *Garavaglia v. J.L. Mason of Mo., Inc.,* 733 S.W.2d 53, 56 (Mo.App.1987). Because the mechanic's lien law is remedial in nature, it is to be liberally construed. *Breckenridge,* 842 S.W.2d at 552. As the Missouri Supreme Court stated in *Sweeney:* "As a general rule, statutes relating to mechanic's liens should be liberally construed in favor of lien enforceability." 102 S.W.3d at 9.

In its motion for partial summary judgment, as to Count IV of the appellants' second amended petition, Golf Trust did not challenge the appellants' right to proceed under § 429.010 to impose a mechanic's lien for labor performed and materials supplied by LOCI for the work done on the Project and for which they were not paid. Rather, it alleged that the appellants' lien statement, as provided in § 429.080, was deficient in that it failed to comply with the mandatory provisions of § 429.040 for establishing a single lien on multiple lots such that no lien was established as to any of the lots described in the statement.

A party seeking to establish a mechanic's lien, as authorized by § 429.010, must comply, *inter alia,* with the provisions of § 429.080, *Sweeney,* 102 S.W.3d at 9. Section 429.080 reads:

It shall be the duty of every original contractor, every journeyman and day laborer, and every other person seeking to obtain the benefit of the provisions of sections 429.010 to 429.340, within six months after the indebtedness shall have accrued to file with the clerk of the circuit court of the proper county a just and true account of the demand due him or them after all just credits have been given, which is to be a lien upon such building or other improvements, and *a true description of the property,* or so near as to identify the same, upon which the lien is intended to apply, with the name of the owner or contractor, or both, if known to the person filing the lien, which shall, in all cases, be verified by the oath of himself or some credible person for him.

(Emphasis added.) Golf Trust alleged in its motion that the appellants failed to comply with the provisions of § 429.080 in that their statement or notice of lien did not contain "a true description of the property" on which they sought to establish their lien.

In alleging that the appellants' lien statement was deficient, in that it did not contain a "true description of the [subject] [property]," Golf Trust alleged that, contrary to § 429.040, the statement included a description of non-contiguous lots, rendering the statement deficient and resulting in the lien being invalid as to all the property described in the statement, not just the non-contiguous lots.

Section 429.040 provides:

When the improvements consist of two or more buildings, united together and situated upon the same lot or *contiguous*

lots, or separate buildings upon *contiguous* lots, or a continuous or connected sidewalk in front or alongside of *contiguous* lots, and erected under one general contract, it shall not be necessary to file a separate lien upon each building or lot for the work done or materials furnished in the erection of such improvements. (Emphasis added.) This section generally allows the filing of one lien, commonly known as a blanket lien, for improvements to separate buildings located on contiguous lots. *Concrete Co. of Ozarks v. Catamount Ridge North, L.L.C.,* 63 S.W.3d 260, 263–64 (Mo.App.2001). Thus, in order to establish a single or blanket lien on multiple lots, the lien claimant must comply with the requirements of § 429.040. The appellants sought to avail themselves of the provisions of § 429.040 by filing one lien as to improvements made on multiple lots of the Project. Thus, in order to show that they had a valid lien as to these lots, the appellants had to show substantial compliance with not only § 429.080, but with § 429.040.

Reading §§ 429.040 and 429.080 together, Golf Trust contends that the appellants' lien was invalid and unenforceable, *in toto,* because the description of the property in the appellants' lien statement, required by § 429.080, included, contrary to § 429.040, a description of non-contiguous lots, as well as contiguous lots. In other words, Golf Trust is contending that the inclusion of non-contiguous lots in the lien statement description of property invalidated the appellants' lien not only as to those lots, but the contiguous lots as well. While the appellants concede that their lien statement contained a description of non-contiguous lots, which were non-lienable under § 429.040, they contend that this language was surplusage and did not affect the validity of their lien as to the contiguous lots, which were lienable under § 429.040. Hence, in determining whether the trial court erred in sustaining Golf Trust's motion for summary judgment on Count IV and invalidating the appellants' mechanic's lien, *in toto,* on the basis that the appellants' lien statement was deficient as to the description of the lien property, the issue for us is whether, pursuant to §§ 429.040 and 429.080, the inclusion of non-contiguous lots in the property description of the appellants' lien statement invalidated their lien as to all the property described in the statement, or just as to the non-lienable lots.

In interpreting statutes, we are to ascertain the intent of the legislature, giving the language used its plain and ordinary meaning. *Pavlica v. Dir. of Revenue,* 71 S.W.3d 186, 189 (Mo.App.2002). Where the legislative intent is made evident by giving the language employed in the statute its plain and ordinary meaning, we are without authority to read into the statute an intent, which is contrary thereto. *Id.* When the legislative intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied. *Id.*

In contending as it does in this point, Golf Trust points to the language of § 429.080 that the required lien statement must contain a "true description of the property." It argues that by including in the property description of their lien statement a description of the non-contiguous lots, the statement did not contain a "true description of the property" that was subject to a blanket lien, as authorized by § 429.040, such that the appellants' lien was invalid, *in toto.* The appellants counter with the fact that, as to the contiguous lots, which were subject to the filing of a blanket lien, pursuant to § 429.040, their lien notice did contain a "true description

of the property" such that as to those lots, they satisfied all the requirements of §§ 429.040 and 429.080 for establishing a lien thereon. Thus, the dispute between the parties is a legal one as to the effect of the appellants including, in their required § 429.080 lien statement, a description of non-contiguous lots, which constituted non-qualifying property for a blanket lien on multiple lots under § 429.040, on their establishing a mechanic's lien on the contiguous lots, which did constitute qualifying property for a blanket lien under § 429.040.

In support of their claim in this point, the appellants cite *Dave Kolb Grading, Inc. v. Lieberman Corp.*, 837 S.W.2d 924, 938–39 (Mo.App.1992). There the court was asked to address the very issue that confronts us here. The lien claimants in *Kolb* sought to enforce their blanket liens against multiple lots. *Id.* at 938. The appellants claimed that, pursuant to § 429.040, the blanket liens were unenforceable because the subject lots were non-contiguous. *Id.* The court first addressed the issue of whether the subject lots were contiguous. *Id.* at 939. Finding that they were not, the court then turned to the issue of whether including, in the lien notice description, property that was not subject to a blanket lien under § 429.040, invalidated the lien in its entirety. *Kolb* at 939. The court held that it did not, stating that the "description of the nonlienable property [was] simply surplusage. If *more* land is described than is necessary the lienable part will be charged and judgment given accordingly." *Id.* (citations omitted) (emphasis added). This clearly supports the position of the appellants in this point.

The respondents seek to distinguish *Kolb* by pointing out that, unlike the appellants' lien statement in our case, there the lien statements of the claimants did not

seek to impose a lien on the non-lienable property for work performed only on the lienable property, but only for work performed on the contiguous lots that were subject to a blanket lien, in accordance with § 429.040. This distinction is irrelevant given the fact that the appellants here readily admit that in treating the description of the non-contiguous lots in the appellants' lien statement as surplusage, the amount of their lien demand was required to be adjusted by the trial court to reflect work performed solely on the qualifying contiguous lots.

The issue of what work was performed as to what property goes to the requirement of § 429.080 that the lien statement contain a "just and true account of the demand due." In that regard, it is well settled in the law that a "lien statement may be regarded as 'just and true' [in accordance with § 429.080], so as not to vitiate the entire lien, if the inclusion of a non-lienable item is the result of honest mistake or inadvertence without intent to defraud and if the non-lienable items can be separated from the lienable items." *Sears, Roebuck & Co. v. Seven Palms Motor Inn*, 530 S.W.2d 695, 698–99 (Mo. *banc* 1975); *see also Structure & Design, Unlimited, Inc. v. Contemporary Concepts Bldg. & Design, Inc.*, 151 S.W.3d 904, 907 (Mo.App.2004); *Am. Prop. Maint. v. Monia*, 59 S.W.3d 640, 643 (Mo.App.2001). Hence, the fact that in excluding, as surplusage, the language in the appellants' lien statement concerning the non-contiguous lots, the statement of the account due the appellants would be rendered inaccurate, due to a demand for work performed on non-lienable property, would not work to vitiate the entire lien, unless Golf Trust's motion established with undisputed facts that the appellants intended to defraud Golf Trust or that the non-lienable items could not be separated from the

lienable items. In that regard, the summary judgment record discloses that Golf Trust did not allege any such facts in its motion. Hence, there is nothing in the summary judgment record from which the trial court could have granted summary judgment to Golf Trust on Count IV based on the appellants' failure to include in their lien statement a just and true account of their demand on the subject property.

In its brief, Golf Trust cites *Stewart Concrete & Material Co. v. James H. Stanton Constr. Co.*, 433 S.W.2d 76, 80 (Mo.App.1968), in support of its contention that the inclusion of the non-lienable items in the appellants' lien statement vitiated the lien, *in toto*. There, this court held that the eight subject lots were non-contiguous such that a blanket lien, in accordance with § 429.040, could not be imposed thereon. *Stewart*, 433 S.W.2d at 80. However, the issue raised by the appellant on appeal in *Stewart* was not whether the inclusion of the non-lienable items vitiated the entire lien, the issue raised in this case, but "whether or not these eight lots which plaintiff [sought] to impress with one mechanics' lien [were] 'contiguous' within the meaning of Section 429.040." *Id.* at 79. Thus, at best, from Golf Trust's perspective, *Stewart* could be said to *implicitly* stand for the proposition that the inclusion of the non-lienable items in the lien notice vitiated the lien, *in toto*. In any event, even assuming, *arguendo*, that *Stewart* could be cited for the proposition urged by Golf Trust in this point, we believe that the reasoning of *Kolb* is far more persuasive and should be followed over *Stewart*.

For the reasons stated, Golf Trust failed to make a *prima facie* case for summary judgment as to Count IV, on the basis that the lien statement was deficient, as being contrary to § 429.040, for including a description of non-lienable property, the non-contiguous lots. And, inasmuch as Golf Trust's summary judgment on Count V was based on the granting of summary judgment on Count IV and the dismissal of the other defendants, as to both Counts IV and V, was also based thereon, the court's judgment of May 12, 2003, granting Golf Trust summary judgment on Counts IV and V and dismissing those counts as to the remaining defendants, must be reversed. And, given our disposition of Point I, the appellants' claim of error in Point II is moot, and we need not address it.

## Conclusion

The judgment of the Circuit Court of Miller County, granting summary judgment to Golf Trust on Counts IV and V of the appellants' second amended petition and dismissing those counts as to the remaining defendants, is reversed, and the cause is remanded for further proceedings consistent with this opinion.

ELLIS and HOWARD, JJ., concur.