Brenda D. OWSLEY f/k/a
Brittain, Appellant,

v.

Clayton J. BRITTAIN, Respondent.

No. WD 64812.

Missouri Court of Appeals,
Western District.

Feb. 7, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 2006.

As Modified March 28, 2006.

---

Seth D. Shumaker, Kirksville, MO, for appellant.

Milton E. Harper, Jr., Columbia, MO, for respondent.

Before EDWIN H. SMITH, Chief Judge, HAROLD L. LOWENSTEIN, ROBERT G. ULRICH, PATRICIA A. BRECKENRIDGE, JAMES M. SMART, JOSEPH M. ELLIS, VICTOR C. HOWARD, THOMAS H. NEWTON, RONALD R. HOLLIGER, LISA WHITE HARDWICK, Judges, and FRANK D. CONNETT, JR., Sr. Judge.

THOMAS H. NEWTON, Judge.

Ms. Brenda D. Owsley appeals from the circuit court's modification judgment, challenging its rulings on child support, child-support arrearages and abatement, the attorney's fee award, and certain evidentiary issues. Finding error on one issue, we affirm in part and reverse in part.

The parties (Ms. Owsley and Mr. Clayton J. Brittain) were married and had one child, John, who was born in 1984. They divorced in 1993 and were awarded joint legal and physical custody.[1] Mr. Brittain was also ordered to pay child support. In 1997 the judgment was modified by awarding sole legal and physical custody of the child to Mr. Brittain; Ms. Owsley was ordered to pay $249 per month in child support during the school year, and Mr. Brittain was obligated to pay $196 per month during the summer months when John visits with his mother. In 2002, his senior year in high school, John moved in with his mother; and neither party paid child support. In September 2002, Ms. Owsley filed a motion to modify child custody and amended the motion in February 2003. Ms. Owsley sought sole physical custody[2] and joint legal custody. She also sought to terminate her child-support obli-

---

1. The 1993 Decree of Dissolution describes the custody arrangement in terms of each parent having the child during alternating weeks.

2. In her motion to modify, Ms. Owsley actually requested "primary physical custody." Under section 452.375.5, however, primary physical custody is not identified as a custodial option. § 452.375.5 RSMo. (2000 and Supp.2004).

gation and impose a support obligation on Mr. Brittain.

While the motion was pending, John graduated from high school and enrolled in college. To prepare for trial and calculate Mr. Brittain's support obligation, his attorney made numerous attempts in 2003 to obtain information from Ms. Owsley regarding her finances and John's college enrollment, financial aid, and employment. The parties stipulated that neither Ms. Owsley nor John provided written notification to Mr. Brittain regarding college enrollment, the courses, or his grades for semesters beginning in fall 2003 and ending in summer 2004. On August 24, 2004, one day after the new semester began, Mr. Brittain did receive the documentation necessary to continue his support obligation under section 452.340.5.[3]

Following a bench trial in September 2004, the circuit court determined that John's earnings justified a deviation from the presumed child-support amount and ordered Mr. Brittain to pay child support to Ms. Owsley of $137 per month from October 1, 2002, through August 31, 2003, and, thereafter, commencing in January 2005. The court further determined that child support should abate from September 1, 2003, through December 31, 2004, for John's failure to comply with section 452.340.5. Ms. Owsley's child-support arrearages of $5,027.10 and Mr. Brittain's child-support arrearages of $831.10, both determined as of September 1, 2004, were set aside. Finally, legal fees of $4,000 were awarded to Mr. Brittain due to the "extraordinary amount" of time and legal services required to defend the action.

Ms. Owsley raises six points on appeal and asserts that the circuit court erred in: (i) abating child support from September 1, 2003, through December 31, 2004; (ii) assessing attorney's fees against her; (iii) incorrectly calculating Mr. Brittain's child-support obligation; (iv) making an inconsistent, vague, and unenforceable order regarding child-support arrearages; (v) failing to consider Ms. Owsley's request for attorney's fees; and (vi) failing to allow Ms. Owsley to question the parties' child concerning notice to Mr. Brittain about his college enrollment.

▬ In a bench-tried case, we affirm the circuit court's decision unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Meyer v. Block*, 123 S.W.3d 316, 321–22 (Mo. App. W.D.2003). We defer to the court's credibility determinations and view the evidence and all reasonable inferences in the light most favorable to the court's judgment. *Id.* at 321. We disregard all contrary evidence. *Id.* Regarding the exclusion or admission of evidence, trial courts have considerable discretion, and we will not reverse an evidentiary ruling unless that discretion has been abused. *Campbell v. Campbell*, 929 S.W.2d 757, 762 (Mo. App. W.D.1996).

▬ As to attorney's fees in child-support cases, the circuit court's decision is presumed correct, and we defer to its determination. *Sullivan v. Sullivan*, 159 S.W.3d 529, 542 (Mo.App. W.D.2005). The complaining party bears the burden of overcoming the presumption that the circuit court has considered all of the factors under section 452.355.1. *Id.* And we will not reverse a circuit court's award or denial of attorney's fees in such cases, unless the complaining party shows that its decision was "against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Bauer v. Bauer*, 38 S.W.3d 449, 457 (Mo.App. W.D. (2000), unless otherwise indicated.

**3.** All statutory references are to RSMo.

2001) (citation omitted). We consider the circuit court to be an expert on attorney's fee issues, and it may consider a spouse's unreasonable conduct during the proceedings that may have increased the other spouse's fees. *Id.*

■ With respect to continuing eligibility for child support after the child reaches age eighteen, section 452.340.5 provides in relevant part:

If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school or completion of a graduation equivalence degree program and so long as the child enrolls for and completes at least twelve hours of credit each semester, not including the summer semester, at an institution of vocational or higher education and achieves grades sufficient to reenroll at such institution, the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-two, whichever first occurs. **To remain eligible for such continued parental support, at the beginning of each semester the child shall submit to each parent a transcript or similar official document provided by the institution of vocational or higher education which includes the courses the child is enrolled in and has completed for each term, the grades and credits received for each such course, and an official document from the institution listing the courses which the child is enrolled in for the upcoming term and the number of credits for each such course.**

(emphasis added).

■ Our rules of statutory construction require this court to determine the intent of the legislature by considering the plain and ordinary meaning of the words used in the statute. *Jones v. Dir. of Revenue*, 832 S.W.2d 516, 517 (Mo. banc 1992). Furthermore, if the language of the statute is clear and unambiguous, there is no room for construction. *Id.*

According to Ms. Owsley, she was the obligated parent for child support until the circuit court modified the parties' support obligations in 2004. Hence, she was not required to provide proof of John's enrollment or other documentation under this section. She argues, "Since Mr. Brittain was not the obligating parent under Section 452.340.5, whether he received such documentation from the child is immaterial and the provisions of Section 452.340.5 would not apply as it pertains to the father in this case." To the contrary, Mr. Brittain was obligated under the 1997 court order to pay child support to Ms. Owsley during the summer months. Regardless, the statute does not distinguish between obligated and non-obligated parents. To remain eligible for support, the child is simply required to provide the documentation to "each parent," and we see no reason to interpret the statute otherwise. *See Mayes v. Fisher*, 854 S.W.2d 430, 432 (Mo. App. W.D.1993) (where statutory language is unambiguous, resorting to statutory construction is unnecessary).

Ms. Owsley further contends that even if the section does apply, the child was not required to provide proof of enrollment with respect to his first semester, and the summer semester is also exempt from the reporting requirements. While the Missouri Supreme Court has acknowledged that "[t]here appear to be no reporting requirements for the first semester" under this section, eligibility for support during that semester may be established "simply by proof of enrollment." *In re Marriage of Kohring*, 999 S.W.2d 228, 233 (Mo. banc 1999). There is no indication in *Kohring* about how the child complied with this

requirement, and we will not address that issue now.[4] Regarding the summer semester, the only exception noted in the statute relates to the 12–credit hour requirement and not to the notification requirements, which are set forth in a separate sentence and relate without exception or qualification to "each semester."

According to the stipulation filed by the parties and the evidence introduced at trial, before 2004 John did not provide any information to his father, either oral or written, official or unofficial, that he was enrolled in college for the fall 2003 semester. The parties have also stipulated that, except for documents provided on August 24, 2004, John did not provide any written documentation to Mr. Brittain regarding "the courses in which he was enrolled, the number of credit hours, and his grades for the Fall 2003 semester, Winter 2004 semester and Summer 2004 semester."[5] Accordingly, the circuit court did not err in finding Mr. Brittain's support obligation abated between September 2003 and August 2004.

■■■■■ The court did err, however, in finding that, because the specified documentation was not provided to Mr. Brittain until the day after the fall 2004 semester started, John was not eligible for support for that semester either. We do not find that the statute requires the child to submit the documentation to each parent *before or on the exact day* the semester commences. The statute simply states that such information shall be submitted to the parents "at the beginning of each semester." § 452.340.5. When we interpret statutes, we attempt to ascertain the legislature's intent and generally start by giving the language used its plain and ordinary meaning. *Lake Ozark Constr. Indus., Inc. v. Osage Land Co., L.L.C.*, 168 S.W.3d 471, 477 (Mo.App. W.D.2005). When the legislative intent cannot be discerned from the statute's language, the statute is considered ambiguous and only then can we apply the rules of statutory construction. *Id.* In this case, the phrase "at the beginning," which sets forth the time that documentation relating to college or vocational school enrollment must be submitted to the parents to continue a parental support obligation, does not have a plain and ordinary meaning.

As Judge Howard wisely observes, there is no precise dictionary definition for the word "beginning." The definitions range from "the point at which something begins to exist," to "the first part," "the first third," and "a rudimentary stage" or an "early period." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (UNABRIDGED) 198 (1993). Nor does some of the world's great literature appear to have a fixed definition or usage for the term. For example, Marcel Proust once wrote, "Not only does one not retain all at once the truly rare works, but even within such works it is the least precious parts that one perceives first. Less deceptive than life, these great masterpieces do not give us their best at the beginning." JOHN BARTLETT, FAMILIAR QUOTATIONS 6 (16th ed.1992). One can reasonably surmise that Mr. Proust intended to convey a message of "on first reading" in his observation. Or not. Similarly, Sir Winston Spencer Churchill, lauded as a master of the written and spoken word, once said in

---

4. We did note in *Morton v. Myers*, 21 S.W.3d 99, 106 (Mo.App. W.D.2000), that a copy of a letter from the university, stating that the child was registered as a full-time student, was sufficient evidence of enrollment in the first college semester under section 452.340.5.

5. A handwritten addendum to this stipulation provides an exception "for documents received 8–24–04."

a 1942 speech, "Now this is not the end. It is not even the beginning of the end. But it is, perhaps, the end of the beginning." *Id.* at 621. Any reasonable interpretation of the former British prime minister's intent would likely indicate a broad use of the word, not marking any particular day or time.

This court, attempting to interpret the phrase "commencing at the beginning of the school year in 2000," which appeared in a child custody order, noted that the child's mother could be correct in stating that the phrase meant a time after summer vacation had concluded. *Love v. Love,* 75 S.W.3d 747, 761 (Mo.App. W.D.2002). The court determined, however, that construing this phrase in conjunction with another paragraph appearing in the order made it clear that the child's father was entitled to primary physical custody after the last day of the 2000 school year, or before summer vacation had begun. *Id.*

Thus, we can see how elastic this phrase can be, whether used by writers, speakers, judges, or the legislature. In his dissent, Judge Howard looks to the legislative history of the statute to ascertain legislative intent, having found no other way to properly interpret "beginning." We are not convinced that the legislature intended to impose a rigid requirement by its selection and use of the phrase "at the beginning." Rather, we believe that the legislature, recognizing the utility of requiring a continuing child-support obligation for the parents of those children not yet in the workforce but enrolled in an institution of higher learning, intended to impose a flexible requirement that could be applied consistent with the circumstances of each case.[6] We think that imposing the interpretation, "on the first day of class," goes beyond legislative intent and writes into the statute a requirement that the legislature could easily have imposed by selecting a more precise phrase. Its decision not to do so evinces an intent different from that envisioned by the dissenting opinion. Also, the dissent's interpretation could make the statute more unclear, because what first day of class are we talking about? The first day of class for one student may not be the first day of class for another student.

We believe that the legislature intended this requirement to be applied with flexibility; otherwise, it would have more clearly stated that the documentation must be in the parents' possession on the first day of the semester.[7] A flexible requirement gives a court the ability to address individual circumstances, such as where a child takes advantage of the late enrollment offered by some schools or places the documentation in the mail, i.e., submits it, before the semester begins, but it is not received until some time thereafter. While a bright-line requirement could forestall further litigation over exactly what constitutes "the beginning of each semester," in this case we cannot conclude that Mr. Brittain's receipt of the required documentation one day after the semester started is beyond a reasonable interpretation and application of the phrase.[8] Had

---

**6.** Nor does Judge Howard apparently disagree with this interpretation to the extent that he would allow a remand to explore whether a manifest injustice will result in a rigid application of "at the beginning."

**7.** In the dissenting opinion, Judge Howard's suggestion that the legislature is making the requirements tighter and more certain would

carry greater weight had the legislature specifically stated that the documentation must be submitted "on or before the first day" of each semester.

**8.** This court, in dicta, recently noted that a transcript from the University of Missouri at Kansas City provided in the middle of September for the fall 2002 semester would not

the legislature intended otherwise, it would have so specified.[9] Thus, Mr. Brittain's support obligation was not abated for the fall 2004 semester, and the court erred in finding that his obligation would not commence until January 2005.

Ms. Owsley challenges the $4,000 award of attorney's fees on two grounds: (i) the circuit court did not make sufficient findings under Rule 73.01 [10] to support the award, and (ii) she was not obligated to provide the information that Mr. Brittain sought regarding John's income, college expenses, scholarships, and the documentation required under section 452.340.5.

Statutory authority for the award of attorney's fees is governed by section 452.355.1 which states in part:

> [T]he court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment.

■ As for the sufficiency of the circuit court's findings, we find no deficiency. In its findings of fact, the court stated, among other matters:

> 4. [Mr. Brittain's] counsel had to expend time and legal services of an extraordinary amount concerning the pleadings in this case as two hearings were required with respect to the Motion to Modify and the Amended Motion to Modify. An additional hearing was required as [Ms. Owsley's] counsel filed certain allegations in pleadings that were later withdrawn. Two discovery hearings were held for [Mr. Brittain] to obtain proper court orders to obtain proper discovery.
>
> a. [Mr. Brittain's] counsel wrote seven (7) letters to [Ms. Owsley's] counsel requesting documents and information on John's (age 20) grades, college status, college expenses and other items which correspondence was never answered and [Mr. Brittain] had to take John's deposition on September 23, 2003, to obtain school records, college loan records, and other information necessary to properly compute child support in this case.
>
> b. [Mr. Brittain's] legal fees per [Mr. Brittain's] Exhibit No. 7 were a total of $7,274.80 not counting four hours of trial and two hours to prepare the Proposed Findings of Fact for a total of six hours times $150.00 per hour for a total of $900.00 added to the fees of $7,274.80 totaling $8,174.00.
>
> c. [Ms. Owsley] requested legal fees of $6,000.00 in her trial testimony which request for said fees was not pleaded in any of [Ms. Owsley's] pleadings in this cause.

have been timely under section 452.340.5. *Windsor v. Windsor*, 166 S.W.3d 623, 633 (Mo.App. W.D.2005).

**9.** *But see Scott v. Clanton*, 113 S.W.3d 207, 213–14 (Mo.App. S.D.2003) (in dicta, court characterizes as "well taken" father's point that child failed to provide transcripts and other documentation "prior to each academic term"; basis of ruling that father should not have been held in contempt for failing to pay child support is that documentation provided otherwise fell short of statutory requirements).

**10.** Rule citations are to the Missouri Rules of Civil Procedure, unless otherwise indicated.

d. [Mr. Brittain's] counsel wrote [Ms. Owsley's] counsel on February 24, 2003, June 18, 2003, June 23, 2003, June 21, 2003, July 25, 2003, August 13, 2003, and August 28, 2003, which correspondence requested various items: [Ms. Owsley's] W2 for 2002, John's W2 for 2002, John's tax returns, pay records and financial status, John's scholarship information, housing information, personal income information, and actual cost of school, books, tuition and fees. Said records were never voluntarily provided to [Mr. Brittain] causing the necessity of depositions, interrogatories, and motions to produce in this cause.

. . . .

8. Child support calculations pursuant to Supreme Court Rule 88 are as follows:

a. [Mr. Brittain's] Exhibit 3A (Second Amended Form 14) lists [Ms. Owsley's] gross income of $1,446.00 and Respondent's gross income of $3,894.00 per the TRIAL STIPULATION.

In its conclusions of law, the circuit court states, in relevant part:

[Ms. Owsley] should pay [Mr. Brittain's] legal fees in the amount of $4,000, suit monies and court costs due to [Ms. Owsley's] failure to provide discoverable information on an informal basis or even to respond to requests for information during the litigation of the issues in this case.

Given that section 452.355, in allowing an attorney's fee award, requires the court to consider factors such as the financial resources of the parties and their actions during the pendency of the litigation, and that specific findings were made as to these matters, we cannot say that the court's findings were insufficient.

Among the factors the circuit court considers in making an award of legal fees are the actions of the parties while the matter is pending.[11] § 452.355.1; *Bauer,* 38 S.W.3d at 457 (court may consider unreasonable conduct of a spouse during proceeding that may have increased the other spouse's attorney's fees). While it is true that the law does not require Ms. Owsley to provide the information required under section 452.340.5, the correspondence and other evidence introduced at trial confirms that Mr. Brittain's counsel made numerous attempts, beginning in February 2003, to obtain information *that Ms. Owsley's counsel had said he would provide.*[12] In addition, some of the information requested involved Ms. Owsley's finances, which she did have an obligation to provide and had full access to under the law.[13] It was not until late August that a written response was provided to Mr. Brittain, indicating that Ms. Owsley did not have the informa-

---

11. The court is also required to consider the financial resources of the parties in making an attorney's fee award. It is reasonable to infer that the court did so in this case, because it made specific findings as to their incomes and was, in fact, making a child-support award, which requires an examination and consideration of a wide array of financial factors.

12. The letters span seven months in 2003. They show that Mr. Brittain's lawyer was told on more than one occasion that Ms. Owsley's lawyer would provide the documentation requested. As an officer of the court, Mr. Brittain's lawyer has an obligation to be truthful in his correspondence, and we believe, in the absence of any evidence to the contrary, that the facts are as stated therein.

13. The final letter sent by Mr. Brittain's counsel to Ms. Owsley's attorney specifically refers to the failure to provide her financial information.

tion and that a subpoena directed to John would be the best alternative. Had affirmative representations about the documents' availability not been made over a period of months to Mr. Brittain's lawyer, he could have stopped wasting his time seeking the information from Ms. Owsley. It is more desirable to resolve discovery disputes informally, because it saves time and money for the parties. On this record, the circuit court properly determined that a $4,000 award (from a request of over $8,000) for Mr. Brittain's attorney's fees was justified on the basis of actions attributable to Ms. Owsley, and for Mr. Brittain's time and effort over the two-year period of this litigation.[14] Hence, the circuit court did not err in awarding attorney's fees to Mr. Brittain.

In her challenge to the child-support calculation, Ms. Owsley claims that the circuit court (i) ordered payment of support retroactive to October 2002 without any evidence regarding John's income in 2002, (ii) failed to account for John's college expenses, while offsetting Mr. Brittain's obligation by the child's income, (iii) failed to list the factors that made the presumed child-support obligation unjust and inappropriate, and (iv) failed to accurately recite Ms. Owsley's gross monthly income in its judgment. The parties stipulated that John's monthly income was $500. In her motion to modify, Ms. Owsley specifically sought child support retroactive to the date she filed the motion. If John did not earn any income in 2002, it

was incumbent upon Ms. Owsley to present such evidence to the circuit court or to incorporate this information in the stipulation. She did not do so; thus, the circuit court did not err on this basis in making its child-support award.

■■■ There is nothing in Rule 88 or Form 14 that requires a circuit court to include post-secondary school expenses in its calculations. Indeed, the Form 14 comments note that "[p]ost-secondary educational expenses . . . are not included in the schedule of basic child support obligations. These expenses may be included in Form No. 14 as an 'other extraordinary child-rearing cost' if the parents agree or the court orders that the parents contribute to payment of these expenses." Because the evidence in this case was that some of the child's college expenses were being paid with government grants and assistance from grandparents, the circuit court did not abuse its discretion in failing to include these expenses in its Form 14 calculation.

■■■ Regarding the circuit court's determination that the presumed child support of $468 was unjust and inappropriate, Ms. Owsley relies on *Timmons v. Timmons*, 132 S.W.3d 906 (Mo.App. W.D. 2004), to assert that the circuit court must also list the factors that make the presumed amount unjust and inappropriate.[15] The circuit court did state that it was deviating from the presumed child-support

14. While some of the hearings that the circuit court identified as excessive may constitute the normal course of litigation and thus not justify a fee award, the circuit court is in the best position to determine whether litigation has been unduly protracted. *Bauer*, 38 S.W.3d at 457–58.

15. The reference to *Timmons* is misplaced. In that case, the appeals court set forth the two-step procedure required under section 452.340 and noted that the circuit court's

findings confused the distinct concepts of Form 14 rejection and rebuttal of the presumed correct child-support amount. 132 S.W.3d at 910–11. The circuit court in that case had neither accepted the parties' Form 14 calculations nor rejected them. Thus, the appeals court had no basis for determining whether the amount awarded was the presumed correct amount or a deviation therefrom.

amount because of the child's $500 monthly income, properly noting that a child's resources are a factor for it to consider in calculating child support under section 452.340.1(1). Because the circuit court made a specific finding that the presumed child support amount was unjust and inappropriate and set forth the basis for its child-support calculations in its judgment, its ruling will not be disturbed on this basis either.

 Additionally, while the circuit court incorrectly recited Ms. Owsley's gross monthly income in its findings of fact, it is clear from its discussion of the issue that the court used the correct amount, as set forth in the parties' Form 14 calculations and the trial stipulation, in making its support award. *See Foraker v. Foraker*, 133 S.W.3d 84, 94 (Mo.App. W.D. 2004) (where there are inconsistencies between the findings of fact and the judgment, the judgment prevails over the findings of fact). This point is denied.

Regarding child-support arrearages, Ms. Owsley complains that the circuit court's judgment is vague and uncertain. In its judgment, the circuit court orders Mr. Brittain to pay child support of $137 per month beginning October 1, 2002, with a period of abatement from September 1, 2003, through December 31, 2004, and recommencing in January 2005. The circuit court then addresses child-support arrearages, and states that neither party shall pay any to the other. Earlier in its findings, the circuit court discusses the parties' arrearages as shown by the Boone County Circuit Clerk's records. It is clear that the child-support award, which was made retroactive and abated in part, is not the same thing as the unpaid arrearages. Accordingly, the difference between the child-support award and the arrearages stated in the order can be clearly ascertained. *In re Marriage of Melton*, 816

S.W.2d 232, 238 (Mo.App. S.D.1991). This point is denied.

 Ms. Owsley argues that because the parties' trial stipulation provides, among other matters, that the parties are in dispute about "legal fees and costs," the circuit court erred in refusing to receive evidence regarding the amount of her legal fees. She did not, however, include a request for legal fees in her pleadings, and Mr. Brittain timely objected to the introduction of any evidence regarding her legal fees as being outside the scope of the pleadings. In *Higgins v. Higgins*, 918 S.W.2d 383, 384–85 (Mo.App. E.D.1996), the court affirmed a denial of attorney's fees because they had not been pled, and a timely objection had been made during trial to the introduction of evidence on the issue. *See also Norman v. Wright*, 100 S.W.3d 783, 786 (Mo. banc 2003) (court states, "The relief awarded in a judgment is limited to that sought by the pleadings.").

 While issues tried by consent of the parties can be treated as if they had been raised in the pleadings, Rule 55.33(b), the stipulation herein does not support Ms. Owsley's contention that the parties agreed to try any issue that had not been properly pleaded, i.e., the issue of Ms. Owsley's legal fees. A stipulation is not a pleading, but it is "an agreement between counsel with respect to business before the court." *Smith v. Smith*, 985 S.W.2d 836, 841–42 (Mo.App. W.D.1998). We give stipulations "a reasonable construction with a view to effecting the intent of the parties; but in seeking the intention of the parties, the language used will not be so construed as to give it the effect of ... the waiver of a right not plainly intended to be relinquished." *Huegel v. Huegel*, 329 Mo. 571, 46 S.W.2d 157, 158 (1932). The stipulation herein reflects the parties' intention simply to seek the circuit court's determination as

to "legal fees and costs." Had Mr. Brittain intended to waive his right to challenge Ms. Owsley's effort to insert her attorney's fees into the case without having pled the issue, at the very least the statement would have indicated that the parties were disputing *Ms. Owsley's* legal fees and costs. Because the stipulation does not clearly do so, this point is denied.

In her final point, regarding the court's failure to allow her to question their son about notice to his father of his college enrollment, Ms. Owsley contends that section 452.340.5 does not require when proof of enrollment for a first college semester is to be provided so that the child can remain eligible for continued parental support. She argues that Mr. Brittain admits in the trial stipulation that John entered college in August 2003, and that their son's testimony on the matter, barred by the court as irrelevant, would have shown that notice had been provided. According to the evidence presented at trial and the parties' stipulation, the child did not provide any notice to his father about his college enrollment at any time before or during his first semester. Official documentation was not provided until the child had already been in college for a full year.

While the statute does not specify when or how notification of enrollment in the first semester is to be provided, common sense dictates that some form of contemporaneous or prior notification is required to impose a continued parental support obligation under section 452.340.5. Because Ms. Owsley stipulated that John had not provided documentation about his college enrollment and John testified that before August 2004 he had not told his father anything other than that he was considering going to college, the circuit court did not abuse its discretion in refusing to allow the testimony. *Campbell,* 929 S.W.2d at 762.

We affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

THOMAS H. NEWTON, Judge, writes for the majority.

Judges PATRICIA A. BRECKENRIDGE, JAMES M. SMART, RONALD R. HOLLIGER, LISA WHITE HARDWICK, and Sr. Judge FRANK D. CONNETT concur.

VICTOR C. HOWARD, Judge, dissents in separate opinion filed.

EDWIN H. SMITH, Chief Judge, HAROLD L. LOWENSTEIN, ROBERT G. ULRICH, and JOSEPH M. ELLIS, Judges, concur.

VICTOR C. HOWARD, Judge, dissenting.

I disagree with the majority's characterization of the phrase "at the beginning of each semester" in section 452.340.5, as it relates to a college student's responsibility to provide timely school information in order to continue parental support. At the core of the majority's opinion is a desire to read flexibility into this phrase to address individual circumstances. Not only will this cast uncertainty over the legislature's directive, but it is also both unnecessary to satisfy the majority's desire and contrary to the intent of the legislature.

"It is the responsibility of the Court 'to ascertain and effectuate the intent of the General Assembly, and in so doing, [the Court should] look first to the language of the statute and the plain and ordinary meaning of the words employed.'" *State ex rel. Metro. St. Louis Sewer Dist. v. Sanders,* 807 S.W.2d 87, 88 (Mo. banc 1991) (quoting *Alexander v. State,* 756 S.W.2d 539, 541 (Mo. banc 1988)); *see also* § 1.090 ("Words and phrases shall be taken in their plain or ordinary and usual sense[.]").

"That meaning is generally derived from the dictionary." *Abrams v. Ohio Pac. Express*, 819 S.W.2d 338, 340 (Mo. banc 1991). Courts may look beyond the plain and ordinary meaning of a statute when its meaning is ambiguous. *Angoff v. M & M Mgmt. Corp.*, 897 S.W.2d 649, 653 (Mo. App. W.D.1995). "An ambiguity means 'duplicity, indistinctness or uncertainty of meaning of an expression....'" *J.B. Vending Co. v. Dir. of Revenue*, 54 S.W.3d 183, 188 (Mo. banc 2001) (quoting *Lehr v. Collier*, 909 S.W.2d 717, 721 (Mo.App. S.D. 1995)).

I consulted WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 198 (1993), and found the dictionary to be of limited use in this case because the definition of "beginning" is wide-ranging. The first entry is: "the point at which something begins to exist." *Id.* In the context of this case, one could conclude that this means the first day of class because that is when the semester begins to exist. However, the next entry, "the first part: initial section or division," is much less precise, as are a number of other entries. *Id.*

A reasonable and commonsense reading of the phrase "at the beginning of each semester" as used in section 452.340.5 is that it means the first day of class. However, the phrase could plausibly be interpreted in more than one way. When a statute's language is ambiguous, we consider extrinsic matters including, "a statute's history, surrounding circumstances and objectives to be accomplished through the statute." *Riordan v. Clarke*, 8 S.W.3d 182, 184 (Mo.App. W.D.1999). The intent of the legislature is our "'ultimate guide.'" *Long v. Interstate Ready–Mix, L.L.C.*, 83 S.W.3d 571, 577 (Mo.App. W.D.2002) (quoting *Lincoln Indus., Inc. v. Dir. of Revenue*, 51 S.W.3d 462, 465 (Mo. banc 2001)). Applying these guidelines, it is apparent the legislature intended to convey certain-ty in its language used in section 452.340.5, not vagueness or flexibility.

I believe the legislature intended the phrase "at the beginning of each semester" to mean the first day of the semester as published by the school. This means that the student must submit the required documentation to each parent on or before the first day of class. Consequently, in this case, John should have submitted the documentation to his parents on or before August 23, 2003.

John did not provide the required documentation until he finally submitted it to Mr. Brittain's lawyer in response to a discovery request, which John concedes was **after** the first day of the semester. The majority points out that the documentation was submitted only one day late. But what if it was submitted seven days late or ten days late? I do not believe that the legislature intended for its directive to be subject to such a vague and discretionary interpretation resulting in confusion and, as the majority puts it, "further litigation over exactly what constitutes 'the beginning of each semester.'" This "we know it when we see it" approach attaches no meaning to the phrase and offers litigants little more than a game of chance. The majority acknowledges that the phrase in question is ambiguous, but never attempts to define the phrase beyond saying it should be "applied with flexibility." Adopting such a nebulous concept offers perplexity rather than explanation. Side-stepping our responsibility to give meaning to the statutory language at issue creates the potential for many years of expensive litigation before any sort of useful guidance is provided to trial courts, attorneys, parents, and children.

The traditional tools of statutory construction receive light use by the majority. Instead, a fair measure of attention is given to "the world's great literature." The

majority's citation to Marcel Proust and the highly quoted Sir Winston Churchill was interesting, but my curiosity regarding the intent of our legislature remained unsatisfied. Because Churchill once said "[i]t is a good thing for an uneducated man to read books of quotations," it is with some fear of making an admission that I note he also said "[t]he farther back you can look, the farther forward you are likely to see." Evaluating the past actions of our legislature helps us discern how it intended the phrase in question to be applied in the future.

The legislative history of section 452.340.5 reflects our legislature's ongoing efforts to tighten requirements and add certainty regarding the rights and responsibilities of parents and students. Initially, this section was much more broadly written. In 1988, our legislature enacted section 452.340.5 RSMo Cum.Supp.1988, which read:

> 5. If the child is attending an institution of vocational or higher education, the parental support obligation shall continue until the child completes his education, or until the child reaches the age of twenty-two, whichever first occurs. If the child is attending such a school, the child or obligated parent may petition the court to amend the order to direct the obligated parent to make the payments directly to the child.

During the next ten years, a number of amendments added requirements that a student must meet for parental support to continue. Those amendments to section 452.340.5 include:

**1989:** The student must be enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school and must continue to attend such school. § 452.340.5, RSMo Cum.Supp. 1989.

**1997:** The student must "progress[ ] toward completion" of a secondary school program of instruction by enrolling in and completing "at least twelve hours of credit each term"; must achieve "grades sufficient to re-enroll"; and, "[t]o remain eligible for such continued parental support . . . **shall submit to each parent**" specific documentation showing courses enrolled in and completed, grades and credits received, and the courses and number of credits enrolled in for the upcoming term. § 452.340.5, RSMo Cum.Supp.1997.

**1998:** The student must submit the required documentation to each parent "**at the beginning of each semester.**" § 452.340.5, RSMo Cum.Supp.1998.

"When the legislature amends a statute, it is presumed to have intended the amendment to have some effect." *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992). Prior to 1998, there was no statutory time frame or deadline within which the student was required to provide the required documentation to each parent. The 1998 addition of the phrase "at the beginning of each semester" was not added to increase flexibility, but, instead, to add certainty. If the language added flexibility, as the majority suggests, what was the meaning of the previous language? The progressive tightening of the requirements in section 452.340.5 reflects a clear intent to establish certainty for the student and parents in their responsibilities to each other. The majority's reading of the statute contradicts this legislative goal.

A major factor for the majority's desire to add a generous measure of flexibility to its interpretation of "at the beginning of each semester" seems to be a concern for the ability of courts to address "individual circumstances." While I do not intend to

downplay such a concern, I think the majority's approach is unnecessary.

A solid pillar of law, both legislative and judicial, has been steadily constructed through the years to address individual circumstances without undercutting the legislature's desire for individual responsibility. In 1990, the legislature amended section 452.340.5 to state "[i]f the circumstances of the child manifestly dictate, the court may waive the October first deadline for enrollment." § 452.340.5, RSMo Cum. Supp.1990. This concept of "manifest circumstances" has been fleshed out and defined in numerous appellate decisions. "Manifest circumstances include illness, physical disability, financial difficulty, or a parent's refusal to pay child support[ ]" or " 'some other external factor that causes the child to be unable, as opposed to unwilling,' to complete the requirements of § 452.340.5." *Pickens v. Brown*, 147 S.W.3d 89, 92 (Mo.App. W.D.2004) (quoting *Harris v. Williams*, 72 S.W.3d 621, 624 (Mo.App. E.D.2002)). Applying a standard of manifest circumstances allows courts to separate out those students with real hardships from those who are attempting to flaunt the legislature's directives.

As directed by the 1990 amendment, the courts have applied the manifest circumstances analysis to late enrollments. However, since the early 1990's, courts have also extended the analysis to other areas of a student's noncompliance such as failure to comply with the requirement of continuous enrollment [1] or failure to successfully complete the minimum credit hour requirement in a semester.[2] This approach preserves a mandate for strict compliance while allowing for the consideration of individual injustice, i.e., certainty tempered with compassion. "[W]e are guided by the proposition that the General Assembly is presumed to be aware of existing declarations of law and the construction of existing statutes when it enacts a law on the same subject." *State v. Haskins*, 950 S.W.2d 613, 616 (Mo.App. S.D. 1997). Any disagreement with the expansion of the concept of manifest circumstances into other areas of section 452.340.5 undoubtedly would have been addressed by the legislature when it added "at the beginning of each semester" in 1998.

There is yet another reason why the majority's position is contrary to legislative intent. It is clear from the language of section 452.340.5 that the legislature has placed the burden to do all things necessary to continue parental support not on parents, but on students, who are adults in the eyes of the law and, in many cases, are already in the workforce and directly receive the support payments. Section 452.340.5 makes it the student's responsibility to enroll on time, to continuously enroll in and complete a minimum number of credit hours a semester, and, *at the beginning of each semester*, to provide to each parent the required documentation detailed in the statute. The only way a parent can gain timely access to the documentation is for the student to provide it. The majority's approach would turn this responsibility on its head by placing the burden on parents to show prejudice due to a student's noncompliance with the documentation requirement. Introducing new concepts of prejudice or substantial compliance would result in the long and expensive development of a unique, stand-alone body of law addressing only the school documentation portion of the subsection. It is an unnecessary and counterproductive

---

1. *See, e.g., Harris*, 72 S.W.3d at 624.

2. *See, e.g., Pickens*, 147 S.W.3d at 92–93; *Mandel v. Eagleton*, 90 S.W.3d 527, 531 (Mo. App. E.D.2002).

approach when the long-established consideration of manifest circumstances has worked well.

The majority attaches no meaning to the phrase "at the beginning of each semester," treating it more as a suggestion than a requirement and, in the process, undermines the ability of a parent to receive meaningful and useable information. By declining a serious attempt at statutory construction, the majority misses the context and the intent of the language. The decision is also a departure from previous cases enforcing the language as a requirement. *See Windsor v. Windsor*, 166 S.W.3d 623, 633 (Mo.App. W.D.2005) (transcript submitted in mid-September for the fall 2002 semester was untimely under section 452.340.5); *Morton v. Myers*, 21 S.W.3d 99, 107–08 (Mo.App. W.D.2000) (documentation provided in December 1998 for the fall 1998 semester was not submitted at the beginning of the semester); *Scott v. Clanton*, 113 S.W.3d 207, 214 (Mo.App. S.D.2003) (failure to provide documents "prior to each academic term" did not meet the time requirements of the statute).

It should also be noted that this is not an issue of emancipation under section 452.340.5, i.e., where a student fails to enroll by October first or fails to earn the required credit hours each semester, thereby forfeiting support forever. If a student fails to provide the necessary documentation for one semester, he or she may qualify for support again by complying with the statute the next semester. *Ricklefs v. Ricklefs*, 111 S.W.3d 541, 544 (Mo.App. W.D.2003).

In summary, I believe the legislature intended to fix a definite and certain deadline for students to provide their parents with the documentation required by section 452.340.5. I interpret the phrase "at the beginning of each semester" in section 452.340.5 to mean on or before the first day of the semester as published by the school. This easily understood deadline would be balanced with the consideration of any manifest circumstances that would cause injustice in a particular situation.

John did not provide the required documentation "at the beginning" of the semester. Hence, I would reverse and remand to give Ms. Owsley the opportunity to have the trial court consider whether the documentation provided complied with the statute and whether manifest circumstances can explain why the information was provided late.

I concur with the rest of the majority's opinion.

