In re the Marriage of Dee Claire **ANDERSON,** f/k/a Dixie J. Aronberg, Appellant/Cross–Respondent,

v.

**Jerome M. ARONBERG,** Respondent/Cross– Appellant.

Nos. 68628, 68717.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 13, 1996.

Leonard J. Frankel, St. Louis, for appellant.

Ellen F. Watkins, St. Louis, for respondent.

CRAHAN, Presiding Judge.

Both parties appeal the judgment entered in response to their cross-motions to modify their dissolution decree. Mother appeals the trial court's denial of her request that tuition remission payments made by her employer, Washington University, be credited against her obligation to pay one-half of the children's college expenses as provided in the decree. Father appeals the denial of his request for reimbursement of college expenses previously paid, the amount and distribution of child support, and the denial of his request for attorney's fees and costs. We affirm.

Both parties are physicians and earn substantial incomes. Mother is employed by the Washington University School of Medicine ("WU") and Father is in private practice. The original Decree of Dissolution was entered on December 30, 1983 and incorporated the terms of a settlement agreement. Mother was awarded custody of the parties' three minor children, Alison, Cassie and David. Father was ordered to pay child support in graduated amounts which reached a maximum of $350.00 per month per child beginning December 31, 1986. Father voluntarily increased his child support payments to $650.00 per month per child in 1988.

The settlement agreement contained the following provision for secondary and college education:

21. The parties agree that both shall be equally liable for the expenses and costs of secondary private schooling, if applicable, as well as undergraduate college educations of the minor children at a college or university of the child's and the parties' choice. An "undergraduate college education" shall mean the obtaining of a bachelor's degree or some similar degree or the obtainment of age twenty-three (23). Ex-

penses shall include books, tuition, fees, supplies, transportation and room and board.

Mother's employer, WU, offers a non-taxable college tuition remission program which pays tuition and mandatory academic fees in the amount of one-half of WU's current tuition directly to a college or university attended by its employees' children. This program was in existence and both parties were aware of it at the time they entered into the settlement agreement. However, there was no discussion of how the tuition remission payments would be treated in the event the children were able to take advantage of the program.

When Alison began her undergraduate education at St. Louis University in 1992, mother forwarded the bill for the balance due after WU's tuition remission payments to Father. Father testified that, although he thought he was only obligated to pay one-half of this amount under the terms of the settlement agreement, he paid the full amount of the balance due both in 1992 and 1993 because he was concerned that failure to tender the payment to St. Louis University in a timely manner could jeopardize Alison's admission. On several occasions, Father attempted to raise the issue with Mother but she refused to discuss it.

In April, 1994, Alison moved into an apartment and Father gave her $633.00 per month to pay her rent. At the same time, Father reduced his child support payments to the decree-ordered amount of $350.00 per month per child.

Cassie enrolled at Carlton College in the fall of 1994 and WU again made tuition remission payments directly to Carlton College in her behalf. Rather than pay the full remaining balance as he had done the two previous years for Alison's tuition, Father tendered a check to Mother for one-half of the balance due on Cassie's tuition. Mother then filed a Motion to Modify the decree seeking an increase in child support retroactive to the date of filing. Father filed a reply and cross-motion seeking abatement of child support for the children in college and permission to pay child support directly to the children in college. Father also sought an order clarifying the parties' obligations under Paragraph 21 of the settlement agreement. Specifically, Father requested a declaration that each party was obliged to pay one-half of the child's actual out-of-pocket expenses— *i.e.*, expenses remaining after any tuition remission payments. Father also claimed reimbursement for one-half of Alison's college expense paid by Father in 1992 and 1993.

After a hearing, the trial court entered an amended judgment modifying the decree of dissolution. In the amended judgment, the trial court modified paragraph 21 of the decree, defining one-half of the cost of attending college to be "the actual cost to the child, *i.e.*, if child receives a scholarship or other aid which reduces costs, the 'cost' does not include the amount of such scholarship or aid." Father's child support obligation was increased to $553.07 per month per child retroactive to the date Father was served with Mother's motion. The trial court denied Father's request for reimbursement of Alison's previous college expenses, authorized payment of child support directly to Alison but not to Cassie, and abated child support by 25% for Cassie and David while enrolled in college and living away from home but not for Alison. Both parties timely filed an appeal.

■ In this judge-tried case, we must affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ In her sole point on appeal, Mother urges that the trial court erred in ordering her to pay one-half of the cost of the children's college education without giving her credit for the contribution made by her employer under its tuition remission program. Before turning to the reasons Mother claims this was error, we note that the factual predicate for Mother's contention is a mischarac-

terization of the trial court's ruling. The trial court did not order her to pay one-half of the "cost" without "crediting her" for the contribution made by her employer's tuition remission plan. It defined "cost" as the actual cost to the child after taking into account any scholarship or other aid which reduces the cost. Thus, Mother does receive credit for the tuition remission payments because the cost she is obligated to pay is only one-half of the actual cost to the child after taking such payments into account. Mother's true complaint is that this approach also reduces the amount to be paid by Father and obligates her to pay somewhat more than if "cost" was defined as the total stated tuition of the institution attended and her employer's payments were treated as a credit only toward her obligation.

■ Mother first contends that the trial court's approach is contrary to Paragraph E of the Comments for Use to Form 14, which provides:

> E. Post-secondary educational expenses are not factored into the Schedule of Basic Child Support obligation. Post-secondary expenses can be ordered by the court if it is determined by the parents or the court to be appropriate for the parents to contribute to the costs of such programs. To determine an appropriate amount, the court may consider annual tuition expense, room and board expenses, including room and board expenses for a child residing in the home of one parent while attending school or during school recesses in excess of 30 days and other reasonably necessary expenses. In addition, the court should consider scholarships, grants, stipends and other cost reducing programs available to the student. Post-secondary educational expenses can be included on Form 14 as extraordinary expenses (line 4e). In an appropriate case payments may be ordered to be made directly to an educational institution or to the child as approved by the provisions of section 452.340, RSMo 1986.

Contrary to Mother's contention, we interpret this paragraph as contemplating pre-cisely the approach taken by the trial court in this case. From the admonition that the trial court should consider "scholarships, grants, stipends, and other cost-reducing programs available to the student," it is clear that any court order for payment of post-secondary expense should properly be based on actual out-of-pocket cost to the student, not the stated tuition charges. The WU tuition remission program certainly qualifies as a "cost-reducing program" available to the children.

Mother urges, however, that the tuition remission payments are a fringe benefit, available solely because of her work and labor as an employee of WU, and therefore the payments are no different from a cash payment made directly from her to the school for tuition. The WU program is unlike a scholarship, she argues, because the child does not earn or do anything for the benefit to apply.

As noted above, it is irrelevant whether the tuition remission program could technically be characterized as a scholarship because it is unquestionably a "cost-reducing program available to the student" as provided for in Comment E. Moreover, although the program is indeed available solely because of Mother's work, it is decidedly different from a cash payment made directly from her. A cash payment by Mother would be made from her income. So long as the WU program satisfies the requirements of the tax code, tuition remission payments are not considered income either to her or her children and thus are nontaxable. *See* 26 U.S.C. § 117(d). Among the requirements for this favorable tax treatment is that the payments may *not* be made as *quid pro quo* for services rendered. *See, e.g., Field v. C.I.R.*, 680 F.2d 510, 513 (7th Cir.1982).

Although Mother may have taken the tuition remission program into account when accepting or remaining in her position at WU, she is required to do the exact same work regardless of whether she takes advantage of the program. If Mother had no children or the children did not attend college, she would receive no benefit from the

program. She cannot elect to receive cash in lieu of participating in the program. Thus, payments made by the program are not equivalent to income paid to Mother as compensation for services.[1]

In fact, to define the parties' obligation in terms of the total tuition charged by the institution and then apply the remission payments as a credit against Mother's obligation could arguably give rise to unintended tax consequences for one or both parties. In 1992 and 1993, for example, Alison's tuition at St. Louis University was approximately $15,000. The WU tuition remission payment, one-half of the tuition at WU, was about $9,000, leaving a balance due of $6,000, which was paid by Father. If Father's obligations were defined as one-half of the tuition charge prior to any tuition remission payments by WU, he would owe Mother another $1,500.00. If Mother accepted this money, she would essentially be converting a non-taxable benefit into cash, thus potentially triggering tax liability for herself. Even if she sought no reimbursement, she, and Father, would arguably be in at least constructive receipt of income. The trial court's approach avoids this problem because the parties' obligation is defined in terms of actual out-of-pocket cost to the child. Thus, neither party can be charged with any taxable income as a result of the program.

Finally, Mother attempts to analogize the tuition remission payments to a non-custodial parent's Social Security disability benefits paid directly to the children and to the rationale supporting the collateral source doctrine applied in tort cases. We find neither situation analogous to the present case. Unlike Social Security benefits, neither the parent nor child makes any contribution to the WU tuition remission program in order to be eligible for benefits. Nor can the present parties be analogized to a tortfeasor and an injured party. Our dissolution act is not based on fault, children are not torts, and Father cannot in any sense be considered a tortfeasor.

We find no error in the trial court's modification of the decree to provide for the sharing of actual college expenses remaining after the application of any scholarships, grants or other cost reducing programs. Point denied.

■ Father's cross-appeal raises five points of alleged error.[2] Only two warrant discussion. In his first point, Father urges that it was an abuse of discretion for the court to deny him reimbursement for the portion of Alison's first two years' tuition that should have been paid by Mother. A trial court may, within its discretion, make an award of child support, including college expenses, retroactive. *Davies v. Davies*, 887 S.W.2d 800, 803 (Mo.App.1994). As a general rule, however, a parent who voluntarily exceeds decreed child support payments may not claim credit against future payments. *Finley v. Morrow*, 697 S.W.2d 543, 544 (Mo. App.1985). The same is true for reimbursement of voluntarily paid college expenses which are a form of child support. As Father points out, the general rule has its exceptions, such as where the parties have agreed or other equitable considerations exist. *Id.* Here, Father claims that his testimony that he made the payments in order not to jeopardize Alison's registration and was reluctant to engage Mother in litigation establishes that the payments were not voluntary. The trial court was not required to believe this testimony and we presume that the court's factual findings were in accor-

---

1. Mother also cites the "Directions for Completion of Form 14" for the proposition that "significant employment-related benefits received by a parent may be counted as income." We find nothing in the record, however, that indicates either Mother, Father or the trial court attributed any of the tuition remission payments to Mother as income in calculating the amount of Father's child support. Because there is no indication that the tuition remission payments were consid-

ered in determining Mother's income, this is a further reason why the payments should not be counted as a "credit" against Mother's obligations in the manner she urges.

2. Mother's motion to dismiss three of these points for failure to comply with Rule 84.04(d), taken with the case, is hereby denied.

dance with the judgment rendered. On this record, the court could have found the payments to be voluntary and we find no abuse of discretion in failing to order reimbursement.

Father also claims the trial court erred in refusing to abate Alison's support payments while she was attending college as it did for Cassie and David. In *Schubert v. Tolivar*, 905 S.W.2d 924, 927 (Mo.App.1995), we held that the circumstances under which child support may be abated are controlled by statute, § 452.340.2 RSMo 1994, and that abatement is thus impliedly forbidden under all other circumstances. Section 452.340 does not provide for abatement while a child attends college. Thus, the error was in ordering abatement while Cassie and David attend college, not in refusing to abate support for Alison. Mother concedes she did not raise this error in her original brief but points out that *Schubert* was not decided until after her brief was filed. Mother requests that we review the issue as "plain error" pursuant to Rule 84.13(c). Under that rule, "plain errors affecting substantial rights may be considered on appeal in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." In view of the very substantial incomes of both parties, it is difficult to conceive how a difference of approximately $250.00 per month in child support could result in a "manifest injustice or miscarriage of injustice" or have any appreciable impact on the lifestyles of the parties or the children. Accordingly, we decline to review the issue pursuant to Rule 84.13(c).

We have carefully reviewed Father's remaining points and find them to be without merit. Extended discussion of these issues would have no precedential value. Accordingly, we affirm the trial court's judgment on these issues pursuant to Rule 84.16(b).

Judgment affirmed. Costs are assessed equally against the parties.

CRANDALL and DOWD, JJ., concur.