Suanne PEINE, Respondent,

v.

Martin Steven PEINE, Appellant.

No. WD 65017.

Missouri Court of Appeals, Western District.

Sept. 12, 2006.

1. The motion for sanctions for frivolous appeal is denied.

Larry Vaughn Swall, II, Liberty, for appellant.

Kelly J. Ruark, Independence, for respondent.

Before BRECKENRIDGE, P.J., HOWARD and HOLLIGER, JJ.

PATRICIA BRECKENRIDGE, Presiding Judge.

Martin Peine appeals the trial court's judgment modifying the prior judgment that dissolved his marriage to Suanne Peine. In his first point on appeal, Mr. Peine asserts that the trial court erred in failing to abate his child support obligation from August 2003 through December 2004 because his daughter, Emily Peine, failed to comply with the notice requirements of section 452.340.5, RSMo 2000,[1] regarding eligibility to continued child support while attending college. In his second point, Mr.

---

**1.** All statutory references are to the Revised Statutes of Missouri 2000.

Peine claims that the trial court erred in rebutting the presumed child support amount as unjust and inappropriate without making findings of fact. In his final point, Mr. Peine contends that the trial court erred in finding that there was no change in circumstances warranting a modification or termination of his obligation to pay maintenance. Because Emily failed to comply with the notice provisions of section 452.340.5 for the fall 2004 semester, she was not eligible to receive child support during that time period. Therefore, the trial court's judgment is reversed and remanded with instructions to credit Mr. Peine's future child support obligation with the amount of child support he paid during that time period. The judgment is affirmed in all other respects.

## Factual and Procedural Background

The trial court dissolved the parties' marriage on February 25, 2000. The judgment dissolving their marriage awarded the parties joint legal and physical custody of the parties' two children, Jeffery, born November 22, 1982, and Emily, born June 18, 1985. The judgment awarded Ms. Peine physical custody, subject to the reasonable visitation rights of Mr. Peine.[2] The judgment also ordered Mr. Peine to pay $900 per month in child support and $500 per month in maintenance.

In May 2001, Jeffery graduated from high school. He enrolled at the University of Missouri–Columbia as a full-time student in August 2001, with an anticipated graduation date in May 2005. Emily graduated from high school in May 2003. She enrolled as a full-time student at North-

west Missouri State University in the fall semester of 2003.

On May 6, 2004, Mr. Peine filed a motion to modify the judgment dissolving his marriage. In his motion, Mr. Peine alleged a substantial and continuing change in circumstances sufficient to justify a change in child support. In particular, Mr. Peine claimed that he did not receive any enrollment information to show that either Jeffery or Emily were attending college or "successfully completed any term in an institution of higher education." In addition, he alleged that Ms. Peine's income had increased since the date of the judgment dissolving his marriage to such an extent that the presumed child support amount would deviate by more than twenty percent. Thus, Mr. Peine requested that the court abate his child support "for all months in which he has failed to be notified of the children's education status, progress or eligibility" and to set an amount of child support commensurate with Supreme Court guidelines. Moreover, based on an alleged change in circumstances regarding Ms. Peine, Mr. Peine sought to have his maintenance obligation terminated or modified to a "nominal amount."

Following the filing of Mr. Peine's motion to modify, in June 2004, Emily mailed Mr. Peine a transcript from Northwest Missouri State University, which indicated that she had completed thirteen of sixteen hours for the spring 2004 semester and that she began college in the fall semester of 2003. Prior to this time, neither Emily nor Jeffery provided any documentation to Mr. Peine regarding their college enrollment. In addition, on June 7, 2004, Ms.

---

**2.** While the trial court's judgment dissolving the parties' marriage awarded Ms. Peine "primary physical custody," it should be noted that "primary physical custody" is not a custodial arrangement authorized under law. *See Aurich v. Aurich,* 110 S.W.3d 907, 912 (Mo.App. W.D.2003) (citing *Loumiet v. Loumiet,* 103 S.W.3d 332, 338 (Mo.App. W.D.2003)) (noting that section 452.375.1(1), RSMo 2000, does not provide for "primary physical custody" or a "primary physical custodian").

Peine filed a counter-motion, which sought an increase in child support. In particular, Ms. Peine's motion alleged that an increase in child support was necessary because there had "been a tremendous increase in the cost of supporting" the children and that they were "both attending college, thereby increasing the cost of their support." On October 4, 2004, Emily sent Mr. Peine a copy of her class schedule for the fall 2004 semester.

The trial court held a hearing on the Peines' motions on December 1, 2004. Thereafter, the trial court entered its judgment modifying its prior judgment of dissolution. The judgment, entered on December 15, 2004, found that during the fall semester of 2002, Jeffery did not complete twelve hours of college credit and failed to provide Mr. Peine with the information as required by section 452.340 and, therefore, Jeffery was emancipated as of January 1, 2003. Regarding Emily, the judgment found that from January 1, 2004, to June 30, 2004, Emily had failed to provide Mr. Peine with the information required by section 452.340 to remain eligible for continued child support. Therefore, the judgment ordered that Mr. Peine's $900 "child support obligation shall abate for the months of January, February, March, April, May and June of 2004." As a result of the abatement, the judgment ordered that Mr. Peine "shall be given a credit toward his current child support obligation" in the amount of $5400. In addition, the trial court accepted Ms. Peine's Form 14 presumed child support amount of $812 but, nevertheless, rebutted that amount as being unjust and inappropriate and set Mr. Peine's child support amount at $1000 per month beginning December 1, 2004. Finally, the trial court's judgment ordered that Mr. Peine's maintenance obligation continue at the rate of $500 per month.

On January 4, 2005, Mr. Peine filed a motion for new trial or to set aside the judgment of modification to allow for the introduction of additional evidence. Specifically, Mr. Peine alleged that "to prevent prejudice to [him] and a resulting windfall to [Ms. Peine]" it was necessary to "consider evidence regarding the amount of financial aid received by [Emily] toward her college tuition." The trial court denied Mr. Peine's motion. This appeal by Mr. Peine followed.

## Standard of Review

This court will review the judgment of the trial court under the standard of review applicable to any other court-tried case. *Eckhoff v. Eckhoff,* 71 S.W.3d 619, 622 (Mo.App. W.D.2002). The judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

## Error in Child Support Regarding College Expenses for Fall 2004 Semester

■ In his first point on appeal, Mr. Peine asserts that the trial court erred in failing to abate his child support obligation from August 2003 through December 2004 because Emily failed to comply with the notice requirements of section 452.340.5 to remain eligible to receive child support. In particular, Mr. Peine contends that because Emily graduated from high school in May 2003, and she failed to provide notice to him of her enrollment at Northwest Missouri State University or her successful completion of at least twelve hours per semester, he was entitled to an abatement of his child support obligation for the fall 2003, spring 2004, and fall 2004 semesters.

■ In general, a parent's child support obligation terminates when the child

on whose behalf the payments are made reaches the age of eighteen. Section 452.340.3; *Windsor v. Windsor*, 166 S.W.3d 623, 630 (Mo.App. W.D.2005). "[W]hen the child enrolls in an institution of vocational or higher education by the October following graduation from secondary school and if certain requirements are met, the child is eligible for a continuation of benefits." *Ricklefs v. Ricklefs*, 111 S.W.3d 541, 544 (Mo.App. W.D.2003) (citing Section 452.340.5). Section 452.340.5 provides, in relevant part:

> If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school or completion of a graduation equivalence degree program and so long as the child enrolls for and completes at least twelve hours of credit each semester, not including the summer semester, at an institution of vocational or higher education and achieves grades sufficient to reenroll at such institution, the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-two, whichever first occurs. To remain eligible for such continued parental support, at the beginning of each semester the child shall submit to each parent a transcript or similar official document provided by the institution of vocational or higher education which includes the courses the child is enrolled in and has completed for each term, the grades and credits received for each such course, and an official document from the institution listing the courses which the child is enrolled in for the upcoming term and the number of credits for each such course.

In *In re Marriage of Kohring*, the Supreme Court interpreted section 452.340.5 to require "proof of eligibility for parental support on a term-by-term or semester-by-semester basis." 999 S.W.2d 228, 233 (Mo. banc 1999). Specifically, during the first semester of college following graduation from high school, eligibility for continued child support "may be established simply by proof of enrollment." *Ricklefs*, 111 S.W.3d at 544. In each subsequent semester, to remain eligible for child support, the student must provide both parents with a transcript or similar official document from the institution showing: "(1) the courses enrolled in; (2) the courses completed for each semester; (3) the grades and credits received for each completed course; and (4) a transcript from the institution listing for the upcoming semester: (a) the courses enrolled in and (b) the number of credits for each course." *Id.* If the student fails to comply with these requirements in any given semester, the parent is relieved of the obligation to pay child support during that semester. *Id.* Failure to comply with these requirements in any given semester, however, does not "relieve the parent of the responsibility for future payments if the statutory requirements are then met." *Id.* On the other hand, if in any one semester a student does not successfully complete at least twelve credit hours, the student "could properly be adjudged emancipated under the statute so as to terminate [a parent's] support obligation."[3] *Lombardo v. Lombardo*, 35 S.W.3d 386, 390 (Mo.App. W.D.2001).

In his motion to modify filed on May 6, 2004, Mr. Peine alleged that his child support obligation should "be abated for all months in which he has failed to be noti-

---

**3.** In this case, the trial court found that Jeffery did not successfully complete twelve credit hours in the fall 2002 semester and, therefore, was emancipated as of January 1, 2003. This ruling is not challenged on appeal.

fied of the children's education status, progress or eligibility." In its judgment, the trial court ordered that Mr. Peine's "child support obligation shall abate for the months of January, February, March, April, May and June of 2004," and that "[a]s a result of said abatement, [Mr. Peine] shall be given a credit toward his current child support obligation." Mr. Peine claims the trial court erred in failing to abate his child support obligation from August 2003 through December 2004, which covers three academic semesters, that is, the fall 2003, spring 2004, and fall 2004 semesters, because Emily failed to fulfill the statutory requirements noted above for each of those semesters. Contrary to Mr. Peine's assertion, however, the trial court did "abate" Mr. Peine's child support obligation for the spring 2004 semester, which would cover the time period from January 1, 2004, to June 30, 2004, and gave him a credit toward his current child support obligation.[4] Therefore, this court will only address whether the trial court erred in failing to abate Mr. Peine's child support obligation for the fall 2003 and fall 2004 semesters.

Emily graduated from high school in May 2003. Therefore, the fall 2003 semester was Emily's first semester in college. Thus, as noted above, to be eligible for continued child support during that semester, Emily needed only to provide notice to Mr. Peine of her enrollment. *Ricklefs,* 111 S.W.3d at 544. Mr. Peine, however, testified that he did not receive notice of Emily's enrollment at Northwest Missouri State University. Emily also testified that she did not provide Mr. Peine with such notice. In fact, the record demonstrated that the first notice that Emily sent to Mr. Peine regarding her enrollment in college was in June 2004, a transcript that indicated that she was enrolled in college beginning with the fall 2003 semester. "While the statute does not specify when or how notification of enrollment in the first semester is to be provided, common sense dictates that some form of contemporaneous or prior notification is required to impose a continued parental support obligation under section 452.340.5." *Owsley v. Brittain,* 186 S.W.3d 810, 822 (Mo.App. W.D.2006). Emily's notice, which she provided nine months after the semester began and six months after the semester ended, is too late to provide proper notification to Mr. Peine of her enrollment. The notification requirements of section 452.370.5 are designed to make sure that the "non-custodial parent can insure that their children are using [their] child support payments to actually obtain a college education." *Rogers v. Rogers,* 87 S.W.3d 368, 373 (Mo.App. W.D.2002). Providing notice of enrollment six months after the semester ended is insufficient notification to fulfill this purpose. Consequently, because Emily failed to provide timely proof of her enrollment for the fall 2003 semester, her first semester of college, she was not eligible to receive child support during that semester. Mr. Peine therefore argues that he was entitled to an abatement of his child support payments for that time period.

---

4. While the trial court's judgment "abated" Mr. Peine's child support obligation from January 2004 to June 2004, because at the time of the trial court's judgment Mr. Peine had already paid his child support payments covering this time period, the trial court incorrectly used, and Mr. Peine incorrectly requested, that his child support obligation be "abated." As discussed below, a parent is not entitled to an "abatement" of child support for failure to comply with the notice provisions of section 452.340.5. The trial court's ruling with respect to its "abatement" and corresponding "credit" for the months of January to June 2004, however, is not challenged on appeal.

■ While this court agrees with Mr. Peine that Emily was not eligible to receive child support for the fall 2003 semester because she did not provide proper notice of her enrollment, Mr. Peine was nevertheless not entitled to an "abatement" of his child support obligation for this time period. The record demonstrated that Mr. Peine paid his child support obligation during the time period covering the fall 2003 semester. In fact, Mr. Peine did not file his motion to modify, which sought "abatement" of his child support obligation, until May 6, 2004, over five months after the fall 2003 semester ended. "Abate," is defined as "to put an end to," or "to reduce in value or amount." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1 (10th ed.2000). An "abatement," therefore, cannot be granted for something that has already been paid.

In addition, this court has previously held that "the circumstances under which child support may be abated are controlled by statute," and that "abatement is thus impliedly forbidden under all other circumstances." *Anderson v. Aronberg,* 927 S.W.2d 931, 936 (Mo.App. E.D.1996) (citing *Schubert v. Tolivar,* 905 S.W.2d 924, 927 (Mo.App. E.D.1995)). Under section 452.340, "abatement" of child support is only allowed in two instances. First, under subsection 2 of section 452.340, child support may be abated, "in whole or in part," for those periods of time over thirty days when the non-custodial parent has "voluntarily relinquished physical custody of a child to the parent ordered to pay child support." Second, subsection 7 of section 452.340 provides for "abatement"

of child support when a parent, without good cause, has "failed to provide visitation or physical and legal or physical or legal custody to the other parent pursuant to the terms of a judgment of dissolution, legal separation or modifications thereof." Had the legislature sought to provide for "abatement" of child support during periods of noncompliance with the reporting requirements of subsection 5 of section 452.340, it could have easily done so. Consequently, because Mr. Peine requested an "abatement" of child support payments, the trial court did not error in failing to "abate" his child support obligation for the fall 2003 semester.

Although Mr. Peine used an incorrect term, it is clear that what Mr. Peine wants is either a refund or he wants a credit toward his future child support obligation. This court in *Rogers,* 87 S.W.3d at 372–73, addressed this issue. Specifically, this court found that a parent was not entitled to a refund of child support payments already paid based on a child's failure to comply with the notice requirements of section 452.340.5. *Id.* at 373. In so finding, *Rogers* reasoned that a parent is not entitled to a refund for child support payments already paid because section 452.340.5 does not provide for refunds for noncompliance with the reporting requirements. *Id.* at 372. *Rogers* also found that a parent is not entitled to a refund of child support payments already paid because noncompliance with the reporting requirements of section 452.370.5 does not result in a child's emancipation and, therefore, subsection 4 of section 452.370 does not apply to require a refund.[5] *Id.* at 372–73.

5. Section 452.370.4. provides:
Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child. The parent entitled to receive child support shall have the duty to notify the parent obligated to pay support of the child's emancipation and failing to do so, the parent entitled to receive child support shall be liable to the parent obligated to pay support

In addition, a parent is also not entitled to a refund of child support payments already paid because a parent's payment of child support during a time when a child did not comply with the notice requirements of section 452.340.5 is, in essence, a voluntary overpayment of child support and, therefore, is not refundable. *Jansen v. Westrich*, 95 S.W.3d 214, 220 (Mo.App. S.D.2003). *See also Carey v. Carey*, 84 S.W.3d 469, 473 (Mo.App. E.D. 2002) ("An overpayment of child support is presumed voluntary."). It is not necessary to rely on a presumption in this case, however, because Mr. Peine testified that he voluntarily paid child support. Specifically, Mr. Peine testified that he knew that he could file for relief from child support payments based on his children's failure to comply with the notice requirements of section 452.340.5. Mr. Peine, however, stated that he chose not to file for such relief and continued to pay child support. Consequently, Mr. Peine's continual payment of child support payments, in light of Emily's failure to comply with the notice requirements of section 452.340.5, was voluntary. Thus, while Emily's failure to provide Mr. Peine with proof of her enrollment in college during the fall 2003 semester relieved Mr. Peine of his obligation to pay child support during that semester, because he voluntarily paid child support during that time, he was not entitled to a refund.

Similarly, Mr. Peine was "not entitled to a credit against future child support payments" based on Emily's failure to provide proper notice of her enrollment in the fall 2003 semester. *Jansen*, 95 S.W.3d at 220. In other words, "a parent who voluntarily exceeds decreed child support payments may not claim credit against future payments." *Anderson*, 927 S.W.2d at 935. Thus, even

though Emily failed to provide Mr. Peine with proof of her enrollment for the fall 2003 semester, the trial court did not err in failing to either "credit" or "refund" Mr. Peine with an amount equal to the amount he "voluntarily" overpaid in child support during that time period.

This court now turns to the time period covering the fall 2004 semester. Because this semester was Emily's third semester in college, to remain eligible for continued child support payments, as discussed above, she was required to provide, "at the beginning of [the] semester," both parents with a transcript or similar official document from the institution showing: "(1) the courses enrolled in; (2) the courses completed for each semester; (3) the grades and credits received for each completed course; and (4) a transcript from the institution listing for the upcoming semester: (a) the courses enrolled in and (b) the number of credits for each course." *Ricklefs*, 111 S.W.3d at 544. *See also* Section 452.340.5. The record demonstrated that, on October 4, 2004, Emily sent Mr. Peine a schedule of classes in which she was enrolled for the fall 2004 semester. While the document Emily sent to Mr. Peine was not included in the record on appeal, this court need not determine whether the document Emily provided to Mr. Peine satisfied the requirements set forth above, because Emily did not provide such notice "at the beginning" of the semester, as section 452.340.5 requires.

In *Owsley*, this court interpreted the phrase, "at the beginning of each semester" found in section 452.340.5. 186 S.W.3d at 816–17. In that case, the child had provided the documentation required by section 452.340.5 one day after the semester at issue started. *Id.* at 814. The trial court found that the student was not

for child support paid following emancipation of a minor child, plus interest.

entitled to continued child support for that semester because his notification was untimely. *Id.* This court, however, found that the statute does not "require[ ] the child to submit the documentation to each parent *before or on the exact day* the semester commences." *Id.* at 816. Rather, in interpreting the phrase, "at the beginning," this court refused to establish a bright-line requirement, instead opting for a "flexible requirement," which would give the trial court "the ability to address individual circumstances." *Id.* at 817. While this court failed to define "at the beginning of each semester," this court finds that October 4, 2004, is not "at the beginning" of the fall 2004 semester, which began on August 30, 2004. *See Windsor,* 166 S.W.3d at 633 (transcript provided in mid-September for fall semester untimely under section 452.340.5). Indeed, by October 4, 2004, the fall 2004 semester was well underway and approaching mid-term. Notice provided five weeks into the semester is not "at the beginning" of the semester. Thus, because Emily's notice to Mr. Peine regarding her status for the fall 2004 semester was untimely, she was not entitled to continued child support during that time.

While the record demonstrated that Mr. Peine continued to pay his child support obligation during the fall 2004 semester, under the above analysis covering the fall 2003 semester, it would appear that Mr. Peine was not entitled to either a refund or a credit of the payments he already made during that time period. Regarding a refund, the same analysis applies as discussed above, i.e., Mr. Peine is not entitled to a refund of child support payments he made during this time period based on Emily's failure to comply with the notice requirements of section 452.340.5 because the statute does not provide for a refund and Emily was not emancipated. *Rogers,* 87 S.W.3d at 372–73.

■ Nevertheless, in this case, Mr. Peine is entitled to a credit against his future child support payments for the fall 2004 semester for Emily's failure to comply with section 452.340.5. As discussed above, "a parent who *voluntarily* exceeds decreed child support payments may not claim credit against future payments." *Anderson,* 927 S.W.2d at 935 (emphasis added). Here, however, on May 6, 2004, Mr. Peine filed a motion to modify, which challenged Emily's eligibility to receive child support, based on Emily's failure to comply with the notice requirements of section 452.340.5. Thus, Mr. Peine's challenge to Emily's eligibility to receive child support is evidence of Mr. Peine's desire not to pay, so that his continual payment of child support after filing his motion to modify was payment only under protest. Thus, this court finds that Mr. Peine's child support payments made after May 6, 2004, were not voluntarily made. Consequently, because Emily was not eligible to receive child support during the fall 2004 semester, which began after May 2004, Mr. Peine was entitled to credit for the child support payments he involuntarily made during the fall 2004 semester. Therefore, the trial court erred in failing to provide Mr. Peine with an additional credit against future child support payments for the fall 2004 semester. Accordingly, the trial court's judgment is remanded with instructions to amend the judgment such that Mr. Peine is given an additional credit toward his future child support obligation for the time period covering the fall 2004 semester.

## No Error in Failure to Make Findings of Fact

In his second point on appeal, Mr. Peine asserts that the trial court erred in deviating upward from the presumed child sup-

port amount because the court failed to make findings of fact as to why application of Rule 88.01 is unjust and inappropriate.[6] Mr. Peine also contends in his point relied on that the trial court erred when it refused his request to reopen evidence to consider Emily's college financial aid package.

■ To determine child support awards in compliance with section 452.340 and Rule 88.01, trial courts are to follow the two-step procedure set forth in *Woolridge v. Woolridge,* 915 S.W.2d 372, 379 (Mo.App. W.D.1996), which was approved by the Supreme Court in *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997). *Ricklefs v. Ricklefs,* 39 S.W.3d 865, 869–70 (Mo. App. W.D.2001). In the first step, the trial court "is required to determine and find for the record" the presumed child support amount under Form 14. *Woolridge,* 915 S.W.2d at 379. In determining the presumed child support amount under the first step, the trial court can either accept one of the Form 14 calculations submitted by the parties, or reject both parties' Form 14 calculations and make its own calculation.[7] *Id.* at 380–81. After the court has determined and found the correct Form 14 amount, the second step requires the trial court "to consider whether to rebut the presumed correct child support amount ... as being unjust or inappropriate after consideration of all relevant factors." *Id.* at 379. " 'The trial court has broad and sound discretion in considering whether to rebut the pre-

sumed correct child support amount.' " *Schriner v. Edwards,* 69 S.W.3d 89, 93 (Mo.App. W.D.2002) (citation omitted).

In the first step of the *Woolridge* two-step procedure, the trial court can either accept one of the Form 14 calculations submitted by the parties or reject both of them and make its own calculation. 915 S.W.2d at 380–81. Here, the trial court accepted Ms. Peine's Form 14, which calculated the presumed child support amount as $812 per month. Thus, the court complied with the first step of the *Woolridge* procedure. The court then found that "after consideration of all relevant factors pursuant to Section 452.340.8 and Rule 88.01, [the correct presumed child support amount] is rebutted as being unjust and inappropriate." The court further found that "after consideration of all relevant factors pursuant to Section 452.340.1, R.S.Mo.1994, and Rule 88.01, the reasonable and necessary child support amount is $1,000.00 per month." Mr. Peine asserts that the trial court erred because it did not make findings of fact as to why the correct presumed child support amount was unjust and inappropriate.

■ Under Rule 88.01(b):
Unless a request is filed pursuant to Rule 73.01(c), a written finding or a specific finding on the record by the court or administrative agency that the child support amount under a correctly calculated Form No. 14, after consideration of all relevant factors, is unjust or inappropriate shall be sufficient in a par-

6. Rule 78.07(c), which requires that an allegation that the trial court failed to make statutorily required findings must be raised in a motion to amend the judgment to preserve the issue for appeal, was not in effect until January 1, 2005.

7. In his brief, Mr. Peine also suggests that the trial court erred in failing to either reject or rebut his Form 14 calculation. The trial

court, however, is not required to reject or rebut *both* parties' Form 14s but, rather, may accept *one* of the parties' Form 14s or, alternatively, calculate its own Form 14. Here, as discussed below, the trial court accepted Ms. Peine's Form 14 as the presumed child support amount and, therefore, was not required to either accept or reject Mr. Peine's Form 14.

ticular case to rebut the presumption that the amount of child support so calculated is correct.

Here, the record contains no request by either party under Rule 73.01(c) for written findings. Absent a request for specific findings, "a trial court in 'rebutting' the presumed correct child support amount as being unjust and inappropriate *is not required* to articulate the basis for that finding." [8] *Woolridge*, 915 S.W.2d at 382 (emphasis added). Accordingly, the trial court's finding that the presumed child support amount was rebutted as being unjust and inappropriate is sufficient to rebut the presumption that the calculated amount is correct and the trial court did not err in failing to make findings of fact on this issue.

■ Mr. Peine also claims in his point relied on that the trial court erred in refusing his request to reopen the evidence to consider Emily's college financial aid package. Mr. Peine, however, does not develop this argument in his brief and cites no authority in support of his assertion. These deficiencies in Mr. Peine's brief are grounds for this court to find that his claim is abandoned. *Eagle ex rel. Estate of Eagle v. Redmond*, 80 S.W.3d 920, 926 (Mo.App. W.D.2002). Moreover, at trial, Mr. Peine had the burden of rebutting the presumed child support amount, which he failed to do. Consequently, "as a matter of due process, [he] should not be allowed a second bite of the apple" after the trial ended. *Windsor*, 166 S.W.3d at 636. Mr. Peine's second point is denied.

## No Error in Failing to Modify Maintenance Award

■ In his third point on appeal, Mr. Peine asserts that the trial court's finding that there was no change of circumstances warranting modification or termination of the maintenance award is against the weight of the evidence. Specifically, Mr. Peine contends that the evidence demonstrated that Ms. Peine's income has increased, her expenses have decreased, and that she is able to meet her needs through appropriate employment. Regarding Ms. Peine's expenses, Mr. Peine claims that her expenses have decreased, based on the satisfaction of the mortgage payment on the marital home, which was awarded to Ms. Peine in the judgment of dissolution. Mr. Peine also argues that the trial court incorrectly considered the higher education expenses of Jeffery and Emily as Ms. Peine's personal expenses.

■ "A maintenance obligation may be modified only when there is a showing of changed circumstances that are so substantial and continuing that the terms of the original award become unreasonable." *Goodman v. Goodman*, 165 S.W.3d 499, 500 (Mo.App. E.D.2005) (citing Section 452.370.1). Mr. Peine, as the moving party, "has the burden to demonstrate, by presenting detailed evidence, there are changed circumstances warranting modifi-

8. *See also* Section 452.340.9 ("There shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of the guidelines established pursuant to subsection 8 of this section is the correct amount of child support to be awarded. A written finding or specific finding on the record in a judicial or administrative proceeding that the application of the guidelines would be unjust or inappropriate in a particular case, after considering all relevant factors, including the factors set out in subsection 1 of this section, *is required if requested by a party* and shall be sufficient to rebut the presumption in the case. The written finding or specific finding on the record shall detail the specific relevant factors that required a deviation from the application of the guidelines.") (Emphasis added).

cation." *Id.* " 'This statutory standard is intended to be strict in order to discourage recurrent and insubstantial motions for modification.' " *Id.* at 500–01 (citation omitted).

Here, neither party requested specific findings regarding maintenance and the trial court made no findings. Instead, the trial court's judgment simply found that there had been "no change of circumstances so substantial and continuing in nature as to make the terms of the prior Judgment regarding maintenance unreasonable." Nevertheless, on appeal, Mr. Peine claims that the trial court erred in failing to modify maintenance because it incorrectly found that the costs associated with the children's education expenses as additional expenses of Ms. Peine. While it is true that Ms. Peine testified that her expenses had increased because of the added expense of paying for college, the trial court expressly took this factor into consideration in increasing Mr. Peine's *child support payment* from $900 a month to $1000 a month.[9] The trial court made no such finding with respect to maintenance and this court will not assume that the trial court considered such costs in its determination that there was no substantial and continuing change in circumstances. *See Judy v. Judy*, 998 S.W.2d 45, 53 (Mo.App. W.D.1999) (when no specific findings of fact are made, appellate court presumes fact issues found "in accordance with result reached").

Regarding Mr. Peine's income, at the time of the dissolution in February 2000, Mr. Peine earned between $50,000 and $60,000 a year. At the time of the hearing on Mr. Peine's motion to modify, Mr. Peine's year to date income had increased to $94,329 a year. Considering Mr. Peine's expenses, Mr. Peine testified that, since the dissolution, he has moved to Texas, where his personal property taxes are higher and he pays more for transportation. He further admitted, however, that he pays no state income tax in Texas. Mr. Peine also testified that he pays more in other types of taxes, but the record on appeal contains no detailed evidence regarding Mr. Peine's expenses. While Mr. Peine may have presented a detailed listing of his expenses to the trial court, he has not included such evidence in the record on appeal, "as was his duty, and [this court] must presume that its contents were favorable to the [trial] court's decision and unfavorable" to Mr. Peine. *In re Marriage of Gerhard*, 34 S.W.3d 305, 307 (Mo. App. S.D.2001). In addition, the trial court was simply not required to believe Mr. Peine's claimed expenses, such as $700 per month in food expenses. *Crews v. Crews*, 949 S.W.2d 659, 667 (Mo.App. W.D. 1997) (trial court was "free to believe or disbelieve" party's claimed expenses).

Considering Ms. Peine's income, the record showed that, at the time of the dissolution, Ms. Peine earned about $8000 a year working for the North Kansas City School District. At the time of the hearing on the motion to modify, Ms. Peine's income had increased, in part, because she began working a second job. Specifically, at the time of the hearing on the motion to modify, Ms. Peine continued to work for the North Kansas City School District during nine months of the year, 30 hours a week, making $10.70 an hour. In addition, since the dissolution, Ms. Peine has taken a second job at the Parvin Laundromat. At the laundromat, Ms. Peine works twenty

9. Specifically, in increasing Mr. Peine's child support amount, the trial court found that there had "been an increase in the cost of supporting" Emily "since the Judgment was entered, as she is now older, attending college, thereby increasing the cost of her support."

hours a week and earns $7 an hour. Thus, at the time of the hearing on the motion to modify, Ms. Peine estimated that her income increased to approximately $1998 a month, or $23,976 a year since the dissolution.

Regarding Ms. Peine's expenses, Mr. Peine testified that, since the dissolution, Ms. Peine no longer makes a house payment because the mortgage has been paid off. Mr. Peine testified that the elimination of a mortgage payment is a changed circumstance sufficient to warrant termination of maintenance. In addition, Mr. Peine testified that Ms. Peine is meeting her expenses, that he believes she is in good health, and he knows of no reason why Ms. Peine cannot work full-time.

On the other hand, Ms. Peine testified that, while she no longer has the $460 mortgage payment on her home, she has a home equity loan of about $100 per month, which she obtained to put a new roof on her home. Ms. Peine further testified that she has credit card payments each month for home and car repairs. In regard to her health, Ms. Peine testified that she has several health problems, including diabetes, thyroid problems, and she had triple bypass heart surgery. She further testified that she must continue to work for the North Kansas City School District in order to maintain her health insurance to be able to afford her medications and health care. Ms. Peine also testified that, since the divorce, she has not had the time or the financial resources to attend college. As discussed above, however, Ms. Peine has taken a second job in order to obtain additional funds to meet her expenses.

On cross-examination, Mr. Peine attempted to challenge Ms. Peine's expenses. He claimed that the evidence of Ms. Peine's expenses showed an amount less than her income and, therefore, she was no longer in need of maintenance. The evidence of her expenses was both by testimony and by exhibits and Mr. Peine has failed to include those exhibits in the record on appeal. Therefore, as noted above, this court presumes the evidence excluded from the record on appeal is favorable to the trial court's judgment and unfavorable to Mr. Peine. *In re Marriage of Gerhard*, 34 S.W.3d at 307. Additionally, "[t]he trial court can accept or reject all, part or none of the testimony of any witness." *Colquitt v. Muhammad*, 86 S.W.3d 144, 148 (Mo. App. E.D.2002). For example, on cross-examination Mr. Peine challenged Ms. Peine's monthly expenses for food, claiming that they should be only $50 rather than $200 as she claimed on her income and expense statement. Ms. Peine testified that $50 was a figure that she had included on a prior income and expense statement for her monthly food expenses and that she was simply "figuring it the best [she] could." Considering that Mr. Peine testified that his monthly food expenses were $700, the trial court was free to believe that Ms. Peine's claimed $200 in monthly food expenses was reasonable and that $50 in monthly food expenses was a significant understatement of such expenses.

Here, while the evidence demonstrated that both parties' incomes have increased since the dissolution and Ms. Peine was no longer required to make a mortgage payment on her home, the trial court was free to believe Ms. Peine's testimony that she was still in need of maintenance and disbelieve Mr. Peine's testimony that she was capable of meeting her expenses. *Id.* Indeed, aside from Mr. Peine's conclusory statements about Ms. Peine's circumstances, Mr. Peine failed to demonstrate a change in circumstances to justify modification of his maintenance obligation. In fact, the evidence demonstrated a significant increase in Mr. Peine's income and

the trial court could have disbelieved his evidence regarding increases in his expenses. And while the evidence demonstrated that Ms. Peine's income had also increased since the dissolution, and that she no longer had the expense of a mortgage payment, given Ms. Peine's substantial health problems, her inability to obtain other employment, and the fact that she works fifty hours per week for nine months of the year and is unable to meet her expenses, the trial court did not err in finding that there had been no substantial change in circumstances making the original maintenance award unreasonable. Mr. Peine's third point is denied.

In sum, because Emily failed to comply with the notice provisions of section 452.340.5 for the fall 2004 semester, she was not eligible to receive child support during that time period. Therefore, the trial court's judgment is reversed and upon remand the trial court is directed to amend the judgment to give Mr. Peine an additional credit toward his future child support obligation in the amount of child support he paid during the fall 2004 semester. The trial court's judgment is affirmed in all other respects.

All concur.