

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI, DEPARTMENT
OF SOCIAL SERVICES, FAMILY
SUPPORT DIVISION,

        Appellant,

v.

THOMAS EDWARD DILLOW,

        Respondent.

WD78218

OPINION FILED:

November 10, 2015

Appeal from the Circuit Court of Cole County, Missouri
The Honorable Daniel Richard Green, Judge

Before Division Two:
Mark D. Pfeiffer, P.J., Lisa White Hardwick, and James Edward Welsh, JJ.

The Family Support Division of the Missouri Department of Social Services (Division) appeals the circuit court's judgment granting Thomas Edward Dillow's motion to abate his child support arrearages. The Division contends that the circuit court erred in abating Dillow's child support arrearages because he failed to satisfy the requirements of section 452.340, RSMo Cum. Supp. 2013, for abating child support. We reverse the circuit court's judgment and remand to enter judgment consistent with this opinion.

Mother filed a "Petition for Declaration of Paternity, Support and for Reimbursement of Necessary Support" against Dillow on October 12, 1995. The circuit court found that the summons was served upon a household member at Dillow's residence. A commissioner held a

hearing on December 12, 1995, at which Dillow did not appear. The Commissioner found that Dillow was the father of the child and found that Dillow was obligated to pay child support in the amount of $570.00 per month. On February 1, 1996, the circuit court adopted the Commissioner's Findings and Recommendations as a final order of the court.

At some point after the circuit court's order on February 1, 1996, Dillow rekindled his relationship with Mother for about six months. He claimed that Mother never told him about the child support order during this time. He said that he did not know about the child support order until he was arrested in February 2001 for felony nonsupport. In March 2001, Dillow pled guilty and was released on probation. Dillow started making child support payments but stopped paying in March 2002. In August 2002, a probation warrant was issued. Thereafter, Dillow was sentenced to four years in the Department of Corrections and served time in the Department of Corrections from April 2004 to December 2005. After Dillow was released, he began making child support payments again. At some point he stopped making payments, and, in 2007, he was charged again with felony nonsupport. Dillow was sentenced again to the Department of Corrections. Then, in 2009, he got out of the Department of Corrections but did not start making child support payments until November. In January 2011, the circuit court, at the Division's request, modified the child support amount that Dillow was obligated to pay and ordered Dillow to pay child support in the amount of $206.00 per month.

On January 22, 2014, Dillow filed a motion for abatement of child support arrearages with the circuit court. In the motion, Dillow alleged that: (1) he was improperly served with the original paternity petition; (2) he was unaware of the child support order issued in 1996 until he was arrested in 2001 on felony nonsupport charges; (3) he was never notified of the residence or contact information for the child or the child's mother; (4) he was denied any contact with the

2

child; (5) he has never had contact with the child and has no knowledge as to the whereabouts of Mother; and (6) he was incarcerated in the Missouri Department of Corrections for a total of three and a half years[1] due to nonsupport of the child. In the motion, Dillow acknowledged that he owed back child support arrearages in the amount of approximately $93,000.00. Dillow requested that the circuit court abate his child support, order all arrearages to be abated and cancelled, and asked "for further order as [the] court deem[ed] just and necessary."

In response to Dillow's motion for abatement, the Division asserted as an affirmative defense that "between September 1999 and April 2006 the Family Support Division paid out public assistance benefits in the form of Temporary Assistance to Need Families (TANF) for the support of [the child.]" The Division alleged that, as of January 1, 2014, Dillow was "indebted to the State of Missouri in the amount of $8,111.58 for TANF benefits paid out for the support of [the child]."

The circuit court held a hearing on Dillow's motion. Mother did not attend the hearing.[2] At the hearing, Dillow testified that he tried to write letters to contact Mother over the years. He said that he did not know where she was and that the St. Charles County Child Support Office would not give him her address. The Division said that it did not reveal Mother's whereabouts because her case was classified as a "family violence case." Section 454.440.9(2), RSMo Cum. Supp. 2013, prohibits the Division from "disclosing any information relating to the location of

---

[1]In the circuit court's judgment, the circuit court concluded that Dillow was incarcerated for two and a half years.

[2]The Division notified Mother of Dillow's motion for abatement. Mother asked the court to continue a hearing scheduled for June 23, 2014, so that she could obtain legal counsel. The circuit court continued the matter until July 14, 2014, but Mother failed to appear on that date. The circuit court set the matter for August 8, 2014, and notice was sent to Mother but was returned undeliverable with no forwarding address.

3

one party to another party . . . [i]f there is reason to believe that such disclosure of information may result in physical or emotional harm to the other party."

The Division entered into evidence the Division's Support Calculation Summary, which was a computer generated printout showing that, as of August 6, 2014, Dillow owed $90,001.27 and that $25,138.21 had been assigned to the Division for the state assistance that had been provided.

On January 16, 2015, the circuit court entered its amended judgment decreeing that the amount of Dillow's child support arrearages was zero and that his State debt was also zero.[3] The court found that Dillow's child support arrearages should be abated because: (1) Mother failed to provide some means of contact for Dillow to exercise visitation or have any contact with the child and failed to show good cause why she should not have provided visitation or contact with the child; (2) Dillow served two and a half years in the Department of Correction for his failure to pay support and has been punished for his failure to comply with the order and thus any arrearages incurred prior to and up through his dates of incarceration should be waived; (3) Dillow was not aware of the support order entered in 1995, and Mother's "use of the domestic violence claim" to keep her address from Dillow was "an abuse of the statute and intent of the law;" and (4) the Division did not present evidence of the amount, types, and specific recipient of state assistance provided on behalf of the minor child or Mother. The Division appeals.

In its sole point on appeal, the Division contends that the circuit court erred in abating Dillow's child support arrearages because he failed to satisfy the requirements of section 452.340, RSMo Cum. Supp. 2013, for abating child support. In response, Dillow asserts that the

_____

[3]The circuit court also found that Dillow's child support obligation terminated as of December 2013 due to the child's emancipation.

4

Division has no standing to assert a claim on appeal in regard to child support arrearages above and beyond that claimed to be owed as State debt and has no standing to assert any claim that he owes any debt to the State because the Division failed to prove the amount, types, and specific recipient of assistance for which the State was seeking reimbursement.

"Standing requires that a party have a personal stake arising from a threatened or actual injury." *Schweich v. Nixon*, 408 S.W.3d 769, 774 (Mo. banc 2013). The evidence established that Mother had assigned to the Division the child support arrearages for the State assistance that she had been provided. Father's motion for abatement most certainly threatened the Division's financial interest in those arrearages. When a parent assigns the right to collect payment of child support to the Division, the Division is a necessary party to the case. *Division of Child Support Enforcement v. Shelton*, 25 S.W.3d 165, 166 (Mo. App. 2000). The Division, therefore, had standing in this case to defend its rights to the assigned arrearages.

We agree with Dillow, however, that the Division has no standing to assert a claim to child support arrearages above and beyond that claimed to be owed as State debt. Mother did not attend the hearing on the motion for abatement, even though she entered her appearance in the matter, and she did not appeal from the circuit court's judgment in this matter. Thus, our decision that follows in regard to the propriety of the circuit court's action in abating Dillow's child support arrearages is limited to the State's interest in the child support arrearages.

The Division argues that, pursuant to section 452.340, the circuit court may abate child support under two circumstances only: (1) for those periods of time over thirty days where the custodial parent "has voluntarily relinquished custody of a child to the parent ordered to pay child support," section 452.340.2, or (2) when the custodial parent "without good cause, fail[s] to provide visitation or physical and legal or physical or legal custody to the other parent pursuant

to the terms of a judgment of dissolution, legal separation or modifications thereof," section 452.340.7. Because "'the circumstances under which child support may be abated are controlled by statute, . . . abatement is . . . impliedly forbidden under all other circumstances.'" *Peine v. Peine*, 200 S.W.3d 567, 574 (Mo. App. 2006) (quoting *Anderson v. Aronberg*, 927 S.W.2d 931, 936 (Mo.App.1996)). In other words, section 452.340 precludes the court from abating child support arrearages unless the statute is stringently followed. *Kessinger v. Kessinger*, 829 S.W.2d 658, 660 (Mo. App. 1992). "Abatement is not self-executing. It can only take place upon a finding of a court that the statutory prerequisites have been met." *Id*. "By specifying the circumstances under which a child support obligation will abate, the legislature has impliedly forbidden abatement under all other circumstances." *Schubert v. Tolivar*, 905 S.W.2d 924, 927 (Mo. App. 1995).

Dillow neither pleaded nor presented evidence that Mother voluntarily relinquished custody of a child to him or that Mother failed to provide visitation pursuant to the terms of a judgment of dissolution or legal separation or modifications thereof. Although Dillow complained about his lack of visitation with the child, "'[t]he language of [section 452.340.7] limits its application to decrees of dissolution, legal separation or modifications thereof.'" *Cule v. Cule*, 457 S.W.3d 858, 864 (Mo. App. 2015) (quoting *Gulmen v. Gulmen*, 851 S.W.2d 37, 39-40 (Mo.App.1993)). We have no order of visitation "pursuant to the terms of a judgment of dissolution, legal separation or modifications thereof" before us. § 452.370.7. As we have already mentioned, "[b]y specifying the circumstances under which a child support obligation will abate, the legislature has impliedly forbidden abatement under all other circumstances." *Schubert*, 905 S.W.2d at 927. Thus, the circuit court erred in finding that abatement of the child support arrearages was justified because Mother failed to provide some means of contact for

6

Dillow to exercise visitation or have any contact with the child and failed to show good cause why she should not have provided visitation or contact with the child as required by section 452.340. Moreover, to the extent that the circuit court found that Mother's use of the "domestic violence claim to keep her address from [Dillow] was an abuse of the statute and the intent of the law," we again note that section 452.340.7 limits its application to decrees of dissolution, legal separation, or modifications thereof.[4]

Dillow does not contest that he sought abatement of his child support arrearages pursuant to section 452.340, he merely contends that the Division has no standing to assert any claim that he owes any debt to the State because the Division failed to prove the amount, types, and specific recipient of assistance for which the State was seeking reimbursement. Dillow fails to understand, however, that, as the party seeking abatement of his child support arrearages under section 452.340, he bore the burden of proof. *Brown v. Brown*, 370 S.W.3d 684, 688 (Mo. App. 2012). Thus, to the extent that the circuit court found that abatement was proper because "the Division did not present evidence of the amount, types, and specific recipient of state assistance provided on behalf of the minor child or Mother," it was an improper shifting of the burden of proof.[5] Dillow bore the burden of establishing that his circumstances fell within section 452.340 to be entitled to abatement of his child support arrearages. This he could not and did not do.

---

[4]The paternity judgment awarded no visitation. So, even if we were to declare that the paternity judgment somehow falls within section 452.340.7's parameters of "decrees of dissolution, legal separation or modifications," section 452.340.7 still would not apply because the paternity judgment awarded no visitation rights. Under section 452.340.7, the circuit court could abate Dillow's child support arrearages if it found that mother had failed, without good cause, to provide visitation "pursuant to the terms of a judgment of dissolution, legal separation or modifications thereof."

[5]"For example, it was undisputed that unchallenged judgments existed establishing the original child support amount and modifications thereto. Those support payments, thus, constitute substantial and competent evidence of the monthly amount required to be paid by Dillow. In an abatement proceeding, then, it was Dillow's burden of proving that the circumstances were such that he was entitled to an abatement of those undisputed amounts...not that the Division had to prove he was *not* entitled to credits."

7

We acknowledge that case law supports that, under certain circumstances, the circuit court may apply "equitable principles to fashion a remedy" with regard to child support arrearages. *State ex rel. Div. of Family Servs. v. Isadore*, 893 S.W.2d 872, 876 (Mo. App. 1995). Indeed, although courts "'are restrained from deciding an unpleaded factual issue, a court of equity can grant any relief warranted by pleaded issues whether or not it was specifically included in the prayer for relief,' but only 'when such relief is fully supported by facts which were either pleaded or tried by consent.'" *Colbert v. State Family Support Div.*, 264 S.W.3d 699, 702 (Mo. App. 2008) (quoting *Feinberg v. Feinberg*, 924 S.W.2d 328, 330 (Mo. App. 1996). The facts in this case, however, do not support the application of equitable principles to fashion a remedy with regard to Dillow's child support arrearages.

The circuit court found that, because Dillow served two and a half years in the Department of Corrections, abatement of his child support arrearages was justified. Unlike what the circuit court held, the fact that Dillow was punished for his failure to comply with the child support order by having to serve two and a half years in the Department of Corrections does not establish that "any arrearages incurred prior to and up through his dates of incarceration should be waived." Holding Dillow responsible to pay child support is not an additional punishment for the criminal nonsupport case in which Dillow was incarcerated. Supporting one's child is not punishment. The arrearages occurred due to Dillow's failure to pay court-ordered support when it became due and requiring him to pay those arrearages is not punishment but is a responsibility that he has as the child's father. "[T]he primary purpose of child support is to provide for the child's welfare." *Gerlach v. Adair*, 211 S.W.3d 663, 669 (Mo. App. 2007).

Further, the fact that Dillow claims that he did not become aware of the 1996 child support order until 2001 does not support abatement of his child support arrearages. The

8

evidence showed that in 1995 Dillow was served with the "Petition for Declaration of Paternity, Support and for Reimbursement of Necessary Support" at Dillow's last known address on October 18, 1995. The circuit court found that service was obtained upon a household member at what was believed to be the residence of Dillow. However, Dillow claimed, and the circuit court found Dillow credible, that he was not made aware of the order of child support until he was arrested in 2001. Dillow, however, did not seek to set aside the judgment entered on "Petition for Declaration of Paternity, Support and for Reimbursement of Necessary Support,"[6] and the circuit court did not set aside the judgment as void under Rule 74.06(b)(4) for lack of personal jurisdiction.

Because no substantial evidence supported the circuit court's judgment and because the circuit court erroneously declared or applied the law in regard to abatement of child support, we reverse the circuit court's judgment abating Dillow's child support arrearages owed to the State and its finding that Dillow's debt owed to the State was zero. We remand to the circuit court to enter judgment consistent with this opinion.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

---

[6]Indeed, at the hearing, Dillow's attorney in questioning Dillow said "we're a little past the time limit to challenge the service, but the point is you didn't know about it, is that correct?"